STATE EX REL. STANFORD, APPELLANT, *v.* SCHOOL
DISTRICT No. 1 OF CASCADE COUNTY ET AL.,
RESPONDENTS.

[Submitted November 14, 1894.   Decided November 19, 1894.]

SCHOOL BONDS—*Requisites of notice of election.*—Under section 1950 of the Com-
piled Statutes, as amended by act of February 14, 1893, the question which the
school trustees may decide to submit to the electors, and upon which the elec-
tors shall vote, is, whether authority shall be given to the trustees to issue
bonds in a certain amount, bearing a certain rate of interest, and payable and
redeemable at certain times and for certain purposes. And a notice of elec-
tion which states only the amount of the bonds, and the purposes for which
the money is to be used, wholly omitting the rate of interest of the bonds, the
time when payable, and the time when redeemable, is insufficient, and the
issuance and delivery of bonds pursuant to the election held thereunder should
be enjoined.

*Appeal from Eighth Judicial District, Cascade County.*

ACTION to enjoin the issuance of school bonds.   Demurrer
to the complaint was sustained by BENTON, J.   Reversed.

Statement of the case by the judge delivering the opinion:

This is an action brought to restrain the respondents from
issuing bonds of respondent school district in the sum of
eighty thousand dollars.   A demurrer to the complaint was
sustained in the district court, and from the judgment in pur-

suance thereto the relator appeals. In the relator's complaint various facts are set up, by reason of which it is alleged that the proposed issue of bonds is not authorized by the proceedings taken as a foundation for such issuance.

In the opinion below but one ground for holding that the issuance of the bonds should be restrained is treated, and the facts in regard to it may be stated as follows: Section 1950 of the Compiled Statutes, as amended by act of February 14, 1893, provides as follows: "The board of school trustees of any school district within Montana shall, whenever a majority of the school trustees so decide, submit to the electors of the district the question whether the board shall be authorized to issue coupon bonds to a certain amount, not to exceed three per cent of the taxable property in said district, provided that nothing herein contained shall authorize the issuance of bonds to an amount exceeding two hundred and fifty-one thousand dollars in any one school district, and bearing a certain rate of interest, not exceeding six per centum per annum, and payable and redeemable at a certain time, for the purpose of building and furnishing one or more schoolhouses in said district, and purchasing land necessary for the same." (3 State Sess. Laws, 55.)

The trustees of school district No. 1 of Cascade county passed a resolution in reference to the issuance of eighty thousand dollars worth of bonds, and thereupon submitted the question to the electors of the district, upon the following notice:

"Notice is hereby given that an election in and for school district No. 1, in the county of Cascade, and state of Montana, will be held on Monday, the twentieth (20) day of March, A. D. 1893, from nine (9) o'clock A. M. until sunset of the same day, at the old schoolhouse on the corner of Third avenue, south, and Fifth street, in the city of Great Falls, Montana, when the question will be submitted to the qualified electors of school district No. 1, in the county of Cascade, and state of Montana, whether the board of school trustees of said district shall be authorized to issue additional coupon bonds, to the amount of eighty thousand (80,000) dollars, for the purpose of building one or more schoolhouses in said district

and purchasing land necessary for the same, for repairing and enlarging existing school-buildings, and for the purchase of school furniture and equipments.

[SIGNED]   " J. P. Lewis, Chairman.
" Henry Prentiss, Jr., Clerk."

In pursuance to this notice an election was held, at which a very few of the electors of the district voted, but at which a large majority of the votes cast was in favor of the issuance of the bonds. The trustees thereupon prepared the bonds, and are about to deliver them to a purchaser. It is now contended, on behalf of relator, that the issuance and delivery of these bonds to the purchaser should be restrained, because the law was not complied with in giving the notice of election. On this point the court below held against the relator, and sustained the demurrer. This question is now examined, on appeal, in the opinion below.

*M. M. Lyter*, for Appellant.

*Thomas E. Brady*, for Respondent.

De Witt, J.—Under the statute quoted in the statement above (section 1950, as amended), a majority of the school trustees must first decide to submit the question named in the statute to the electors, and the electors must then vote upon the proposition submitted. That which the trustees may decide to submit to the electors, and upon which the electors shall vote, is plainly stated in the statute. It is whether authority shall be given to the trustees to issue coupon bonds in a certain amount (within the limit defined by the statute) and bearing a certain rate of interest (within the limit fixed by the statute), and payable and redeemable at certain times and for certain purposes. So it seems that, in an election upon the question of issuing bonds of a school district, the matter submitted to the electors contains several propositions, as follows: 1. The amount of bonds; 2. The rate of interest which they shall bear; 3. The time when payable; 4. The time when redeemable; and 5. The purposes for which the money is to be used.

Consulting the notice published by the school trustees, set forth in the statement above, we find that they submitted to the electors only two of the above propositions, namely, the first and fifth; that is, the amount of the bonds, and the purposes of the use of the money. They wholly omitted to submit the second, third, and fourth propositions, namely, the rate of interest of the bonds, the time when payable, and the time when redeemable. Were these propositions so omitted material, or were they simply formalities? The question now arises before the bonds are delivered to any purchaser, and no question of innocent purchaser is involved. (15 Am. & Eng. Ency. of Law, 1272, cases cited in note 4.)

We are of opinion that the trustees did not submit to the electors questions which the law required to be submitted, and that those questions so omitted should, on consideration of an application to enjoin the issuance of the bonds, be considered vital and material, and not simply needless formalities. An election for the issuance of school bonds is a special election, held pursuant to notice. The electors had no notice by any general law, as they have of a general election. The notice of election was therefore indispensable. (Mechem on Public Offices, §§ 172–76; Cooley on Taxation, c. 11.) But the alleged notice in the matter before us did not notify. The electors should have been permitted to decide what rate of interest they were willing that the district should pay. This item was important, and the statute considered it so. Whether the district should pay one rate of interest or another was a question whether the district should or should not pay out a certain sum of money as interest. The difference between one rate of interest and another is a sum of money to be paid, just as much as is the face of the bonds itself. And the statute provides that the electors shall decide upon the payment of this amount just as positively as that they shall decide upon the amount of the principal sum that they shall borrow. The time of payment and redemption is also a matter of importance to the electors. It is of interest to the borrower (and the electors are in fact the borrowers) to decide whether he wishes to make a short loan or a long loan, and whether he shall have the privilege to redeem in a short time, or whether

he must allow the principal to stand, and he be compelled to go on and pay interest, after a date when he thinks that he can lift from himself the burden of this debt. These three important matters the electors never had an opportunity to vote upon. No one ever passed upon these questions, except the trustees when they came to prepare their bonds. We have no doubt that this was for the electors to determine, and not the trustees. As above noticed, this question arises under proceedings to enjoin the issuance and delivery of the bonds, and is not between any innocent purchasers of the bonds and the school district.

It is therefore ordered that the judgment be reversed, and the case be remanded to the district court, with directions to overrule the demurrer, and to proceed thereafter in accordance with the views expressed in this opinion.

*Reversed.*

PEMBERTON, C. J., concurs.