CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, AP-
PELLANT, V. VILLAGE OF WILBER ET AL., APPELLEES.

FILED JANUARY 8, 1902. No. 10,851.

Commissioner's opinion, Department No. 3.

1. Phrase in Statute: ASSESSMENT. The phrase, "the last preceding assessment" employed in subdivision 15, section 69, article 1, chapter 14, Compiled Statutes, is *held* to refer to the assessment last preceding the election at which the proposition to issue bonds is submitted.

2. Term "Assessment": DEFINITION. By the term "assessment" is meant not merely the act of the local assessor, but the completed act of all the agencies employed in determining the amount and value of property available for taxation.

3. Issuing Bonds: PROPOSITION: MAXIMUM. In submitting a proposition to issue bonds in pursuance of the subdivision cited, said proposition is sufficiently definite if it fix the maximum amount to be issued, and vest the village with authority to issue a less amount.

APPEAL from the district court for Saline county. Heard below before HASTINGS, J. *Affirmed.*

*J. W. Deweese, Fayette I. Foss* and *Frank E. Bishop,* for appellant.

*Roscoe Pound* and *J. M. Grimm, contra.*

ALBERT, C.

On May 9, 1894, the village board of Wilber passed an
ordinance providing for the submission to its electors, at
a special election to be held May 31, 1894, of the following
proposition: "Shall the village of Wilber, * * * issue
bonds to the amount of $17,000, said bonds to be of de-
nomination of $500 each, with interest coupons thereto
attached, * * * said bonds to be dated the 30th day of
June, 1894, * * * and to authorize the village board
of trustees of said village to levy and collect a general tax
in the same manner as other municipal taxes may be lev-
ied and collected on all property within said village, * *
to meet the interest and principal on said bonds as they
become due and payable?" The ordinance also provided
that no more of the bonds should be issued or disposed of
than were necessary to complete the water-works, and the
election proclamation proposed the voting of bonds, not
exceeding $17,000, for the construction of a water-plant.
An election was held in pursuance of such ordinance, and
the proposition received the requisite majority. Immedi-
ately thereafter bonds to the amount of $17,000, each for
$500, were printed, signed by the proper officers of the
village, and presented to the auditor of public accounts
and registered in his office. Bonds of this issue to the
amount of $12,000 were sold. The remainder were never
sold, and never passed out of the hands of the village,
but were canceled by order of the village board. The
proceeds of the bonds sold were applied to the purpose
for which they were voted. Thereafter the plaintiff
brought this action against the defendants, the proper
officers of the village of Wilber and of Saline county, to
restrain the levy and collection of taxes for the payment
of said bonds, and the making of any payments thereon,
either from taxes collected or otherwise. A trial resulted
in a finding for the defendants, and from a decree dismiss-
ing its complaint the plaintiff brings the case here on
appeal.

44

The bonds in question purport to have been issued in pursuance of the provisions of subdivision 15, section 69, article 1, chapter 14, Compiled Statutes, which, so far as concerns us at present, is as follows: "Such cities or villages may borrow money or issue bonds for the purpose, not exceeding ten (10) per centum of the assessed value of the taxable property within said village, according to the last preceding assessment thereof for the purchase of steam engines, or fire-extinguishing apparatus, and for the purchase, erection, or construction and maintenance of such water-works, or to pay for water furnished such city or village under contract. * * * No such money shall be borrowed or bonds issued, unless the same shall have been authorized by a vote of the majority of the electors of such city or village." The plaintiff brought and prosecuted this action on a theory, founded on the undisputed facts appearing in the record, which counsel, in their brief filed on behalf of the plaintiff, formulate in the following words: "The first question is whether this issue of $17,000 of bonds is to be tested on the basis of the assessment for the year 1893, which amounted to $171,000, or on the assessment of 1894, which amounted to $121,000. It will be remembered that the bonds were voted May 31, the vote canvassed on June 1. The bonds were dated June 30, and seem to have been in the hands of the village board as late as August 13, when the resolution of cancelation was passed. The assessment for the year 1894 was completed on the books of the assessor May 21, 1894, was returned by him to the county clerk on the 3d of June, showing a valuation for the village of Wilber of $121,045, which amount was not changed by the board of equalization on June 14, 1894. We claim that this latter assessed valuation is the one that must govern the amount of bonds which the village was authorized to issue as of date June 30, 1894, and that the voting and issue of $17,000 of bonds was entirely unauthorized, and the whole issue of bonds must fail. This assessment was certainly the last one preceding the issue of the bonds, and the amount of this

assessment was accessible to the village authorities before the election was held or the bonds were declared carried, and before they were prepared and signed ready for sale. The matter of issuance all occurred after the assessed valuation was determined and could have been known on the 21st day of May, 1894."

The first question that presents itself is, what particular point of time is to be taken into account in order to determine which is the "last preceding assessment"? In our opinion, this question finds its answer in *State v. Babcock*, 24 Nebr., 640, in which it is held, that the amount of bonds to be issued is to be determined by the assessed valuation at the time of the election authorizing their issuance. It is true, the section under consideration has been amended since that case was determined, but the change in the wording is not of such a character as to diminish, in any degree, its binding force as a precedent in the determination of the question before us. That decision has stood for many years. A subsequent amendment of the section, leaving it open to the construction placed upon it by the court in that case, gives that construction a legislative sanction. For these reasons, if no other, it should be adhered to in this case.

The next question is, which assessment, that of 1893 or that of 1894, was the last assessment preceding the election in question? The election was held on the 31st day of May, 1894. The assessment for that year was complete on the books of the assessor on the 21st day of that month, and such books were returned to the county clerk on the 3d day of June thereafter, showing a valuation of the taxable property of the village of $121,045, which was not changed by the board of equalization. The plaintiff insists that this was the last preceding assessment, within the meaning of the statute. We can not concur in that view. The books were still in the hands of the assessor on the day of election, and subject to revision by him at any time before his return to the county clerk. It is conceivable that such a change might have been made during

the progress of the election as would have rendered the election abortive, which but for such change would have been effective. Besides, in our opinion, the term "assessment" has a wider signification than simply the listing and valuation of taxable property by the assessor. Judge Cooley, in his work on Taxation, at pp. 351, 352, says: "An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. * * * As the word is more commonly employed, an assessment consists in the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them. When this listing and estimate are completed in such form as the law may have prescribed, nothing remains to be done, in order to determine the individual liability, but the mere arithmetical process of dividing the sum to be raised among the several subjects of taxation, in proportion to the amounts which they are respectively assessed." Under our system of taxation, the listing and estimate are not complete until after the county board has completed its work as a board of equalization. While sitting as such board, they are authorized to assess all lands that have been listed by the county clerk and not assessed by the assessor, and otherwise to change the assessment. Compiled Statutes, ch. 77, art. 1, sec. 70. A large part of all railroad and telegraph property is assessed, not by the local assessor, but by the state board of equalization, and certified to the county clerks in the counties in which the same is taxable, and thus becomes a part of the basis upon which the levy of taxes is made. Section 40, idem. The basis for the issuance of bonds is, "the assessed valuation of the taxable property within said village," and is to be determined by "the last preceding assessment." To our minds it is clear that the assessment referred to is the completed act of all the agencies employed in determining the amount and value of property available for taxation. If we are cor-

rect in this view, it follows that the validity of the bonds depends not upon the levy of 1894, but upon that of 1893, which it is conceded would warrant the issuance of the full amount of the bonds in question.

Another objection urged against the validity of the bonds is that the ordinance submitting the proposition to issue bonds did not fix the precise amount, but simply provided that the amount should not exceed $17,000. In support of this objection we are referred to *Brown v. Carl*, 82 N. W. Rep. [Ia.], 1033. We have examined that case with care. The question here involved does not appear to have been raised, and certainly was not decided in that case. Our own statute is the chief, if not the only guide, in this matter. We have searched it in vain for a hint that it was the intention of the legislature that the proposition should name the exact amount of bonds to be issued. As a business proposition, the plan adopted by the village in this case appears to us the best. At the time of the submission of the proposition, it had no means by which it could determine the amount necessary for the project. That could only be ascertained with certainty after it was in a position to enter into a contract. By the terms of the proposition, it could not issue bonds beyond a certain amount, but might issue them for a less amount. Had the amount been definitely fixed at the maximum amount, the village certainly would not have been required to sell more than was necessary for the project. Is the proposition invalid, then, because it vests the village with a discretion in the premises which would have been implied in any event? We think not.

We recommend that the decree of the district court be affirmed:

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.