VILLAGE OF CANANDAIGUA v. HAYES et al.

(Supreme Court, Appellate Division, Fourth Department. January 5, 1904.)

1. MUNICIPAL CORPORATIONS—SPECIAL CHARTER—POWER TO ISSUE BONDS.
     Under Village Law (Laws 1897, p. 455, c. 414) § 340, giving a village incorporated under a special law all powers conferred by the general law, not inconsistent with the special law, section 128, p. 411, providing that, if authorized by an election, money may be borrowed by a village on its bonds to pave streets, and a provision of the charter of a village incorporated under a special law granting it all powers granted to villages by any general act, such village has power to borrow money on bonds to pave its streets, notwithstanding a charter provision that the trustees cannot borrow money on the village credit, and that the village cannot incur any debt except as is provided by law for the ordinary expenses within the income of the current year, and a provision for payment for certain improvements from the fund for highways, and for a special tax, if necessary, for the purpose.

2. SAME—METHOD OF AUTHORIZING BOND ISSUE—VALIDITY.
     Charter provisions that the trustees of a village may call a special tax meeting to vote on appropriations for special purposes, but before a tax for a special purpose can be levied a resolution shall be passed specifying its purpose, the amount required, and the number of installments in which it is to be raised, do not authorize an issue of bonds either for a general or special purpose in pursuance of a resolution which fails to state the details mentioned.

3. SAME.
     Though a village charter gives the trustees authority to call special tax meetings for such purposes as the interests of the village shall require, and to carry into effect any resolutions adopted at such meeting, a bond issue is invalid, under Laws 1892, p. 1734, c. 685, § 5 (Gen. Laws, c. 17), providing that a resolution authorizing a funded debt shall provide "for raising annually by tax a sum sufficient to pay the principal and interest as the same shall become due," where the resolution authorizing the issue follows the language of the statute, instead of specifying the sums to be raised by the tax and in what year.

Submission of a controversy, without action, between the village of Canandaigua and William J. Hayes and others. Judgment directed in favor of defendants.

This is a submission, without action, of a controversy upon an agreed state of facts, pursuant to the provisions of the Code of Civil Procedure. The plaintiff has made and executed bonds to the amount of $100,000, the proceeds of which, if sold, are to be used in paying plaintiff's share of the expense of

paving and improving certain streets within its limits. The defendants have agreed to purchase and pay for said bonds, provided the same are legal and binding obligations. This controversy arises between the parties over the question whether they are such good and valid obligations, and the plaintiff asks the decree of this court adjudging them to be so, and compelling defendants to perform their agreement, and accept and pay for said bonds.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

. F. H. Hamlin, for plaintiff.

David G. Lapham and Thomas W. Heatley, for defendants.

HISCOCK, J. The defendants assert that the bonds in question are invalid for the reasons: First, that the plaintiff had no power to issue bonds for street paving or improvement purposes; and, second, that, even if it did have such power, the proceedings adopted by plaintiff for the making and issuing of these bonds were not in accordance with the requirements of law. We shall consider these objections in the order stated.

We feel no hesitation in deciding that the village did have power to issue bonds for the purpose of raising and providing funds with which to pay its share of the cost of paving streets. The village of Canandaigua was originally incorporated in 1815 under a special act of the Legislature. By chapter 666, p. 1573, of the Laws of 1893, the original act and the acts amending the same were revised and consolidated, and the corporation exists at present under the provisions of the act of 1893 and its amendments. By subdivision 50 of section 3 of title 3 of its charter, created as above, plaintiff was empowered "to do all such acts, perform all such duties, and exercise all such powers as are authorized, imposed, conferred, or granted by any general act of the legislature of this state, applicable to villages therein, incorporated under a special act."

By section 340 of chapter 414, p. 455, of the Laws of 1897, known as the "Village Law," it is provided:

"A village incorporated under and subject to a special law, and each officer thereof, possesses all the powers and is subject to all the liabilities and responsibilities conferred or imposed upon a village incorporated under this chapter, or upon an officer thereof, not inconsistent with such special law."

Section 128 (page 411) of said village law provides:

"If authorized by an election, money may be borrowed by a village upon its bonds or other obligations, payable in future fiscal years for the purpose of purchasing, constructing and maintaining the following village improvements: * * * (3) Laying out, widening, altering, grading or paving streets, and for the purchase of a steam roller, stone crusher and engine, and other road making machinery."

It follows from these statutory provisions thus quoted that plaintiff was authorized to issue bonds to provide for indebtedness incurred in paving and improving its streets, unless there is some provision in its charter which is inconsistent with the powers granted by the village law. We do not think there is any such provision. Defendants urge upon our consideration two provisions which they claim are thus inconsistent, but we do not agree with their contention in this respect

made. Section 4 of title 7 of the act already referred to constituting plaintiff's charter provides:

"Money cannot be borrowed by the said trustees on the credit of the village; nor can any debt or liability be incurred by the village, except as is provided by law, for the ordinary expenses of the village within the income of the current year, applicable to that purpose."

These provisions do not cover this case. The first clause quoted plainly prohibits any attempt by the trustees to make general loans upon the credit of the village. The second clause voices a prohibition against incurring extraordinary debts or liabilities by the village for ordinary expenses. It relates to the ordinary current financial management of the village from year to year, and does not speak with reference to an extraordinary expenditure, such as we now have before our consideration, when authorized by a vote of the taxpayers in a proper manner.

The second provision called to our attention by defendants as inconsistent with the provisions of the village law relating to the issue of bonds is section 27, tit. 9, of plaintiff's charter, and which provides for the payment of the expense of certain improvements "from the sum or fund raised for highway purposes for the current year, or from the sum raised for contingent and other expenses as the board of trustees shall deem best. If there shall not be sufficient money on hand not otherwise appropriated or needed to pay the same, said sum may be raised by a special tax, as provided in this act, or the same may be raised with the next annual village tax." It seems to us hardly to have been worth while to refer to this section as bearing upon the question before us, because it is manifestly one of several sections relating to the acquisition of lands for public use by exercise of the right of eminent domain within the corporate limits of said village for roads, avenues, streets, etc. We do not discover any relation or connection whatever between this section thus referred to and the paving of streets. Upon the other hand, in opposition to the contention of defendants upon this point, the provisions of plaintiff's charter seem to necessarily imply and call for the power to issue bonds as plaintiff has attempted. Section 2, tit. 9, provides that the trustees of the village shall have power to "pave, plank, flag or otherwise improve the streets, roadways, crosswalks and sidewalks." Section 31 of the same title provides that "on the written petition or consent of a majority in number and in feet frontage of the owners of the real estate adjoining, abutting or fronting on any of the streets, highways or public grounds of said village, the board of trustees shall have the power to cause said street, highway or public grounds and the gutters therein, to be paved or curbed with stone or other suitable material." Said section then further provides that, in case the paving of any street is properly ordered without the petition of the property owners, not more than one-half nor less than one-third of the expense of the improvement shall be assessed upon the adjoining property; that, in case the improvement is ordered upon the petition of the property owners, not more than two-thirds nor less than one-third of said expense shall be so assessed. The balance in either case must be

paid by the village. We find in the charter no provision which seems to us directly to provide for the payment by the village of its share of the expenses of such improvements without resort to bonds. The provisions with reference to the assessment of taxes do not seem to us to meet such requirements. No question is raised in this case but what the plaintiff in good faith and properly has expended and desires to expend the sum of $100,000 in the immediate paving and improvements of its streets. It would be a great burden, and an unusual course in municipal government, if such expenses should be immediately met by assessment and taxation of property. It is much more in accordance with the spirit of modern municipal government if such extraordinary expenses should be met by the proceeds of bonds extending over and becoming due through a series of years. No objection is urged by defendants that the issue of the bonds in question will in any manner conflict with those general provisions of law limiting the amount of obligations which may be issued by any municipality. We therefore conclude that neither the letter nor the spirit of the statutes applicable prohibited the plaintiff from issuing the bonds.

We now pass to the consideration of the second objection urged by defendants—that the proper steps were not taken to secure a legal issue of bonds for the purposes indicated. This contention is, in our judgment, much more serious. In fact, we feel constrained to agree with it, and hold that proper steps were not taken. It is conceded that the trustees did not have the power to issue the bonds except upon a vote of the taxpayers of the village in accordance with the provisions of law. Sections 55, 59, and 60 (pages 381, 383) of the village law provide for the submission to the taxpayers of a village of a proposition to borrow money, as plaintiff is attempting to borrow it here, by the issue of bonds. The question of the issue of these bonds, however, was not submitted under those provisions, but instead was submitted at a special meeting of taxpayers attempted to be called under the provisions of section 2 of title 7 of plaintiff's charter, which provides as follows:

"The annual tax meeting of the taxpayers of the village of Canandaigua shall be held on the second Tuesday of February in each year, commencing at ten o'clock in the morning. * * * The trustees of said village are hereby authorized and empowered to call a special tax meeting to vote upon appropriations for special purposes by adopting a resolution for that purpose, which resolution shall be duly published in three of the village newspapers, once in each week for three consecutive insertions, next preceding such special tax meeting."

The initial question suggests itself whether this section and the succeeding one, related to it, were intended to refer to or cover the issue of municipal bonds. They are found in a title which treats of the "Assessment and Collection of Taxes." The wording of section 2 does not seem especially apt in describing a meeting called to vote upon such an issue of bonds. The provisions of the village law for a meeting to vote upon such question speak of the submission of a "proposition" upon any question which may be lawfully decided thereat, while it will be noticed that the section in plaintiff's charter re-

ferred to authorizes the trustees to call a special tax meeting to vote upon "appropriations" for special purposes. The word "appropriations," especially when compared with the much broader one "propositions," found in the village law, does not, upon a natural construction, well describe a proposed issue of bonds extending over a period of years.

Passing by this, however, we come to other considerations based upon the succeeding section of plaintiff's charter. This provides:

"Every appropriation of money for any purpose not expressly included, or in excess of the amount specified in section one of this title, shall be deemed a special purpose. Before any tax for a special purpose can be levied, a resolution specifying the purpose, and the amount required, and whether it shall be raised in one sum or annual installments, and if in annual installments, the number thereof, and the amount of each, shall be passed by the board of trustees, and a copy of such resolutions, with a notice that the same shall be submitted to vote by ballot at the next annual tax meeting, or at a special tax meeting, called for that purpose, shall be published in three of the village newspapers at least once in each of the two weeks next preceding such tax meeting. And at the same time, and in the same notice shall be published the several amounts to be raised by tax as provided by section one of this title."

The resolution adopted by plaintiff's trustees providing for the special meeting, so far as applicable, reads as follows:

"Resolved, that a special tax meeting of the qualified electors of the village of Canandaigua be and hereby is called to be held at the town hall in the village of Canandaigua, N. Y., on Tuesday, the 5th day of May, 1903, commencing at 10 o'clock in the morning and closing at 4 o'clock in the afternoon, at which time and place there will be submitted to vote of the electors of said village qualified to vote at said meeting, the following resolutions:

" 'Resolution Number One.

" 'Resolved, that the board of trustees of the village of Canandaigua be and hereby is authorized to borrow on the credit of the village of Canandaigua a sum not exceeding the sum of two hundred thousand dollars ($200,000) and to issue bonds of said village therefor from time to time as the same may be needed for the purpose hereinafter specified, at the lowest obtainable rate of interest, and payable at such time or times as it may determine in conformity to the provisions of law applicable thereto, and that the same be issued and sold in all other respects in conformity to the provisions of section 129 of the village law and of the general municipal law of the state of New York, and to expend the money so borrowed for the purpose of defraying the expense of grading and paving the streets of said village in conformity to the provisions of section 31 of title 9 of the village charter. That a sum sufficient to pay the interest and principal of said bonds, as the same shall become due, be raised by an annual tax, as other taxes for general purposes in said village are raised.' "

The notice calling the special meeting consisted of said resolution and the following addition:

"Notice is hereby given that at the time and place above specified the foregoing resolutions will be submitted to vote by ballot of the qualified electors of the village of Canandaigua, N. Y., entitled to vote at a tax meeting of said village."

The notice composed as above (so far as material here) was duly published as provided by section 2, tit. 7, of plaintiff's charter, already referred to. It will be observed, however, that the resolution did not comply with section 3 of said title in "specifying the purpose and the amount required, and whether it shall be raised in one sum or in an-

nual installments, and, if in annual installments, the number thereof, and the amount of each." The resolution adopted by the board of trustees, and constituting the basis of the notice of the special tax meeting, does not specify when or in what installments the bonds to be issued shall be paid. It does not therefore comply with the provisions of section 3 in this respect.

The learned counsel for the plaintiff, however, insists that the provisions requiring said details are not applicable to this case, because the preceding part of said section 3 provides that only those appropriations of money shall be deemed for a special purpose which are "not expressly included or in excess of the amount specified in section 1 of this title," and that section 1 provides that a general tax may be raised for the following purposes: "(1) A sum sufficient to pay all installments of principal and interest on any bonded debt of the village of Canandaigua." He argues, therefore, that the vote for the issue of these bonds was an appropriation for general, and not special, purposes, and that, therefore, the provisions requiring the statement of the details referred to before any tax for a special purpose can be levied do not apply. The trouble with this argument, however, as it seems to us, is that the authority invoked for calling the meeting at which these bonds were voted for is found in the provisions of section 2, already quoted, that "the trustees of said village are hereby authorized and empowered to call a special tax meeting to vote upon appropriations for special purposes." It therefore follows that either the vote was for an appropriation for a special purpose, requiring a statement in the notice of the meeting of certain details which were not given, or else that the appropriation, not being for a special purpose, finds no authority in a meeting which could only be called to act upon appropriations for special purposes. Whichever view is adopted discloses to our mind a fatal objection to the validity of the proceedings whereby plaintiff sought for the authority to issue these bonds. Perhaps it might be suggested, although it is not so done in plaintiff's brief, that the requirement for the statement of the details indicated is only applicable "before any tax for a special purpose can be levied," and that therefore without such statement authority might be given for the original issue of the bonds, leaving the subsequent levying of taxes wherewith to pay the same subject to the limitations and conditions above referred to. We do not think, however, that the various portions of sections 2 and 3 can be divorced from each other in any such manner as would be necessary in order to sustain any such possible claim. Section 2 provides for a special tax meeting. Section 3 defines an appropriation for a special purpose, and then, treating of the special tax which constitutes and makes effective the special appropriation, requires the resolution giving the details referred to. We do not think, if otherwise legal, that it would be possible to proceed to the issue of these bonds under portions of the sections quoted, while other provisions therein were disregarded. They relate to a single subject, and must be observed in their entirety. Except for the restrictions contained in section 5 (page 1734) of the municipal law, to which we shall hereafter refer, there are other provisions in plaintiff's charter, not referred to by its counsel, which we deem more

available for the purpose of sustaining the validity of the proceedings under review than those called to our attention and which we have discussed.

Subdivisions 6, 7, and 8 of title 3 of plaintiff's charter provide that the board of trustees shall be "authorized and fully empowered: * * * (6) To give notice in the manner prescribed by this act * * * of all special tax meetings, which notice shall specify * * * the question or questions to be voted upon at any special tax meeting. (7) To call special tax meetings in said village for such purposes and at such times as the interests of the village, in their judgment, shall require, due notice of any such meeting, and of the questions to be voted on thereat, being given as hereinbefore provided. (8) To carry into effect every resolution adopted at any tax meeting of such village legally convened, which such meeting shall have authority to adopt." Section 3 of title 2 provides that notice of any special tax meeting of the electors called by the board of trustees, as above provided, shall be given by publication in three newspapers printed and published in said village once in each week, for three consecutive insertions next preceding such election. These sections seem to us more broadly and appropriately to provide for a special meeting of taxpayers to vote upon such a question as the issue of bonds than those found in title 7 and cited by plaintiff's counsel. They also omit the requirement for details which we have already considered and held to be fatal to the validity of plaintiff's proceedings when resting upon sections 2 and 3 of title 7.

There are, however, certain requirements found outside of plaintiff's charter which, in our opinion, prevent the sections last quoted by us from being a sufficient authority for the proceedings in question as they were taken. Because these limitations are found in section 5 of the municipal law (chapter 17 of the General Laws), and because plaintiff's counsel has referred to that section as in some way helping to give validity to the proceedings, we pass to its consideration. It declares that:

"A funded debt shall not be contracted by a municipal corporation, except for a specific object, expressly stated in the ordinance or resolution proposing it; nor unless such ordinance or resolution shall be passed by a two-third vote of all the members elected to the board or council adopting it, or submitted to, and approved by the electors of the town or county, or tax payers of the village or city when required by law. Such ordinance or resolution shall provide for raising annually by tax, a sum sufficient to pay the interest and the principal as the same shall become due."

The last clause is the one which we deem especially important at this point of consideration. We have no doubt that the bonds proposed to be issued constituted a funded debt within the meaning of this section. People ex rel. Peene v. Carpenter, 31 App. Div. 603, 52 N. Y. Supp. 781. The resolution presented to and voted upon by the taxpayers contained as its only compliance with the provision to which we have especially called attention the following clause: "That a sum sufficient to pay the interest and principal of said bonds as the same shall become due be raised by an annual tax as other taxes for general purposes in said village are raised." There was nothing in

the resolution which in any way fixed the time within which, or the installments by which, the bonds to be issued should become due. The only limitation upon this subject was the statutory one contained in section 129 of the village law that such bonds "shall become due within thirty years from the date of issue, and unless the whole amount of the indebtedness represented thereby is to be paid within five years from their date they shall be so issued as to provide for the payment of the indebtedness in equal annual installments, the first of which shall be payable not more than five years from their date." The clause contained in the resolution quoted therefore did not either directly or indirectly, by prescribing the terms of payment of the bonds, fix within any reasonable limits whatever the amount which was to be raised each year by tax for the purpose of meeting these bonds. The query is therefore presented whether this requirement of section 5 of the municipal law is met by the insertion in the resolution voted upon by the taxpayers of a clause which simply follows the general wording of the statute, and gives no reliable or accurate information of the amount to be raised each year by tax, or whether it must be met by a resolution which, with details and specifications, so far as possible, does authorize and provide for an annual tax with which to pay the amount that will each year become due upon the bonds for principal and interest. It seems to us that the latter construction is the more reasonable and proper one. The statutes have been passed which compel trustees to go to the taxpayers for authority before they may issue such bonds as these, and we believe that such a construction should be placed upon these statutes as will compel the submission to the taxpayers of the information which will enable them to act and vote intelligently upon the propositions submitted. If the requirement of the municipal law upon this point may be complied with by any such general clause as was inserted in plaintiff's resolution, we fail to see any object whatever for it. Other provisions having given authority to issue the bonds, it would necessarily follow that installments of principal and interest would have to be met by the proper assessment and levying of taxes from year to year as they became due, and nothing was gained by a provision expressly authorizing such taxation. It would follow as a matter of course and necessity. If, upon the other hand, this provision be construed as requiring the resolution submitted to the taxpayers to state with reasonable detail how the bonds were to be paid, and how much would be required each year by taxation to meet them, we can easily see some force in the statute. We believe it was intended to require the submission of such details as far as practicable in order to enable the taxpayers to vote intelligently. If we apply this construction to the facts of this case, it will be seen that it would have secured for the taxpayers in voting upon these bonds considerable light which was not given to them. They voted to have an issue not exceeding $200,000, and therefore they knew and were forewarned what would be the limit of liability in this respect. The statutes provided that these bonds should not bear to exceed a certain rate of interest, and should not be sold for less than par, and therefore they knew the limitations of what they might expect in this respect.

When, however, it came to the important feature of the time within which the bonds should be paid, and to the amount of the annual tax with which to meet them, nothing was said, and no light was given by the trustees. They might be made payable within five years or they might be extended over a period of thirty years. A taxpayer might be largely influenced in his vote upon such question by the terms as to time upon which the bonds were to be made payable. He might naturally feel that, if this payment was to be extended over a considerable length of time in reasonable installments, the bonds should be authorized, and might feel, upon the other hand, that, if they were to be paid within one or five years, the burden would be too onerous to be undertaken. We think that the ordinary conception of such bonds would be based upon the theory of their extending over a good many years. As a matter of fact, and as they had a perfect right to do if the resolution offered was legal, the trustees have seen fit to make the bonds payable within five years, and it follows that the taxpayers, without being advised of it, and perhaps not anticipating or expecting such result, have laid the foundation for an annual tax levy of over $40,000 in the village of Canandaigua in order to meet these bonds. It is possible that they would, with full knowledge, prefer to authorize such course, but we feel quite sure that the clause under review should be so construed as to have secured to them at the time they voted knowledge of what they were voting upon in this respect. We think that the clause in the resolution intended to meet the requirement in the statute should have indicated the installments upon which the bonds were to be made payable, and which were to be met each year. This information, coupled with the statutory limitations relating to the issue of bonds already referred to, would have given the taxpayers reasonably definite information as to the size of the burden which each year's tax budget would carry, and under these circumstances a vote to raise each year a sum sufficient to pay the installments due upon the bonds would have been an intelligent one, and under conditions which fulfilled the spirit as well as the language of the statutory provisions.

These views lead to the conclusion that judgment must be entered determining that the bonds in question are not valid and legal obligations of plaintiff, and that defendants' bid and award be terminated and held for naught, and that their certified check heretofore deposited be returned to them, with costs.

Judgment directed in favor of defendants determining that the bonds in question are not valid and legal obligations of plaintiff, and that defendants' bid and award be terminated and held for naught, and that their certified check heretofore deposited be returned to them, with costs. All concur.