No. 20,584.

## THE CITY OF OSWEGO, *Plaintiff*, v. W. E. DAVIS, as State Auditor, etc., *Defendant*.

### SYLLABUS BY THE COURT.

MUNICIPAL BONDS—*Improvement of Water Plant—Notice of Election—Irregular but Not Void—Mandamus.* Under a statute authorizing the issue of bonds for the extension and improvement of a municipal water plant, which provided that the notice of the election and the election ballot shall state the amount of bonds proposed to be issued, a city ordinance calling the election, the election notice and the election ballot stated the proposition thus:

"Shall the mayor and councilmen of the city of Oswego, Kansas, issue the bonds of said city in a sum not exceeding Thirty thousand dollars, bearing 5% per annum interest, payable semi-annually; payable within Twenty years from their date, in such manner as the mayor and councilmen may determine, for the purpose of improving the water supply plant and system of said city."

*Held,* that this slight departure from the precision of statement required by the statute touching the amount of bonds to be issued does not render the proposed issue illegal nor preclude their registration.

Original proceeding in mandamus.  Opinion filed February 23, 1916.  Writ allowed.

*Nelson Case,* of Oswego, for the plaintiff.

*S. M. Brewster,* attorney-general, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: The city of Oswego invokes the original jurisdiction of this court in a petition for a writ of mandamus directing the auditor of state to register certain bonds of that city to provide payment for the extension and improvement of its municipal water plant.

It is agreed between the parties that the only question involved relates "to the legality and sufficiency of the description of the amount of the bonds to be issued under the ordinance, election proclamation and ballot recited in the plaintiff's petition."

The pertinent statute, in part, reads:

"Whenever the city council of any such city shall desire to procure authority for the issuance of bonds under the terms of this act, they

shall pass an ordinance directing the calling of an election for the submission of the question to the electors thereof. Notice for such election shall state the amount of bonds proposed to be issued, the purpose of the issue, and state the polling-place or places at which the election will be held." (Gen. Stat. 1909, § 745.)

In the ordinance adopted by the city pursuant to this statute it was provided:

"SECTION 2. That an election is hereby directed to be held at the usual place of voting in the several wards of said city, within thirty days from the taking effect of this ordinance, at which the following proposition shall be submitted to the electors of said city, to-wit: 'Shall the mayor and councilmen of the city of Oswego, Kansas, issue the bonds of said city in a sum not exceeding Thirty thousand dollars, bearing 5% per annum interest, payable semi-annually; payable within Twenty years from their date, in such manner as the mayor and councilmen may determine. for the purpose of improving the water supply plant and system of said city.' "

The notice by the mayor and the city clerk proclaiming the election followed the language of the ordinance and the proposition submitted at the election was approved by a lawful and .sufficient majority of the voters.

It will be noted that the statute provides that the notice for the election shall state the amount of bonds proposed to be issued. The statute gives a form of ballot to be used and directs that the ballot shall conform substantially thereto. A literal compliance with this provision would require that the proposition be thus stated: "Proposition to issue bonds of the city of Oswego to the amount of $30,000.00 for the purpose," etc. (Gen. Stat. 1909. § 746.) The proposition presented by the notice and on the ballots was: "Shall the mayor and councilmen of the city of Oswego, Kansas, issue the bonds of said city in a sum not exceeding Thirty thousand dollars," etc.

It is conceded by the litigants that no exact precedent can be found in our own decisions.

We have examined a large number of cases which have arisen in other jurisdictions and the following support the contention of the plaintiff that the proposition was stated with sufficient accuracy: *Chicago, B. & Q. R. Co. v. Village of Wilber,* 63 Neb. 624, 88 N. W. 660; *Fishblatt v. Atlantic City,* 78 N. J. Law, 134. 73 Atl. 125; *Village of Bronxville v. Seymour,* 122 App. Div. (N. Y.) 377; *Lumberton v. Nuveen,* 144 N. Car. 303, 56 S. E.

940; *The Elyria Gas and Water Co. v. The City of Elyria et al.,* 7 Ohio C. D. 527; *Knight et al. v. Town West Union et al.,* 45 W. Va. 194, 32 S. E. 163.

Tending to support the position taken by the auditor of state that the proposition was not stated with sufficient accuracy are the following: *Hillsborough Co. et al. v. Henderson et al.,* 45 Fla. 356, 33 South. 997; *Smith v. Dublin,* 113 Ga. 833, 39 S. E. 327; *Crooke v. The Board of Commissioners of Daviess County,* 36 Ind. 320; *The Cincinnati, Wabash, and Michigan Railroad Company et al. v. Wells et al.,* 39 Ind. 539; *State, ex rel. Lexington & St. Louis R. R. Co., v. Saline County Court,* 45 Mo. 242; *Stern v. City of Fargo et al.,* 18 N. Dak. 289, 122 N. W. 403.

In some of the cases just cited the issue arose touching the definiteness of the proposition relating to the amount of bonds proposed to be issued and in some instances relating to the definiteness with which the rate of interest was specified. Nor can it be said that in every case the language of the various statutes under consideration was precisely like ours. But in the main the cases turn upon the liberality or the rigidity of the courts in construing the proceedings of the various municipalities under the statutes authorizing such bond issues.

Some help may be drawn from an examination of our own cases.

In *Turner v. Comm'rs of Woodson Co.,* 27 Kan. 314, an injunction was sought to restrain an issue of $27,000 of the bonds of Center township, Woodson county. The maximum amount which could be lawfully issued was $26,385.55. The amount voted by the electors was $27,000. The court held, in effect, that all the proceedings were valid and the bond issue was valid up to the lawful maximum, and held the issue void only as to the excess.

An analogous case to the one before us was *The State v. School District,* 34 Kan. 237, 8 Pac. 208. It concerned the validity of an issue of school bonds in which the statute provided that the bonds "shall specify on their face the date, amount, for what purpose issued, to whom, the time they run, and the rate of interest." (p. 243.) The bonds did not in terms specify for what purpose they were issued, except by a general recital that they were "issued in pursuance of an act of the

legislature of the state of Kansas, entitled 'An act to enable
school districts in the state of Kansas to issue bonds,' approved
February 26, 1866," (p. 240) and acts amendatory and supple-
mental thereto. The court held, in effect, that this was suffi-
cient to show that the purpose of the issue was to provide a
schoolhouse for the district, either by erecting or purchasing
the same.

In *School District v. Cushing*, 8 Kan. App. 728, 54 Pac. 924,
an issue of bonds which was required by the statute to state
on its face to whom issued was held to be sufficiently complied
with by a recital that the bonds were payable "to ———— or
bearer."

It is urged against the issuance of the writ that the city
officials and those interested in the success of the bond elec-
tion might mislead the voters as to the actual amount of bonds
which the city government would issue where the sum is not
positively and exactly specified in the bond proposition. But
this objection is no more true as to a bond election than to any
other election. In any free government the wise and the fool-
ish, the vain and the venal, the radical and the conservative,
may and do exercise the liberty of persuading their fellows to
adopt their views; and all sorts of reasons, logical and illogical,
serious, trivial and absurd, are given by electioneering advo-
cates in their endeavors to win the support of the voters. A
bond election in Oswego is no more likely to be illegally affected
by the misrepresentations, wheedling, or cajolery of the pro-
moters of the bond issue than are elections elsewhere or on any
other proposition submitted for the suffrage of the people.
Moreover, it has never been held that where a positive and
exact amount of bonds has been authorized by the electors that
the municipality must issue that exact sum. When once the
issue has been authorized by the people, every prudent mu-
nicipal government strives to keep the expenditures well below
the maximum amount authorized by the electors; and the prop-
osition submitted to the Oswego voters was simply a request
for authority to issue $30,000 in bonds if that amount was
necessary, and the people gave their sanction to such issue, and
pursuant thereto the municipality now seeks to register and
issue that amount. It seems in accord with the liberal con-
struction always given by this court in scrutinizing the official

Kuter v. Bank.

action of public officers and boards to hold that in the proceedings leading up to the issue of the bonds in question the departure from the exact directions of the statute is not so serious as to prevent their registration.

It should be added, however, that in so important a matter as the issue of municipal bonds, the statutes authorizing them should be carefully studied and closely followed in all the proceedings leading up to their registration. It ought to be the pleasure and pride of municipal officers that in matters like these their work has been so thorough and precise that the registration of their municipal bonds goes through without a hitch, rather than to have them merely "scrape through" on a test case on the ground that the proceedings were not altogether so irregular as to vitiate them.

The writ is allowed.