[No. 15739. *En Banc.* March 2, 1920.]

THE STATE OF WASHINGTON, *on the Relation of Spokane County et al., Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

COUNTIES (79)—BONDS—ASSENT OF VOTERS—NOTICE OF ELECTION— "DURATION" OF BONDS—STATUTES. A notice of a special election to authorize the issuance of county bonds, stating that they shall be payable within a period of twenty years from the date of their respective issues, sufficiently describes their "duration" within Rem. Code, § 5101-4, providing that the notice shall state the amount and duration of the bonds; and is substantially complied with by the issuance of bonds in series, redeemable at specified times running from five to twenty years.

Application filed in the supreme court January 20, 1920, for a writ of mandamus to compel the state

[1]Reported in 188 Pac. 23.

auditor to accept bonds and draw a warrant therefor. Granted.

*Joseph B. Lindsley* and *Fred B. Cunningham,* for relators.

*The Attorney General* and *R. M. Burgunder, Assistant,* for respondent.

TOLMAN, J.—On May 16, 1919, the board of county commissioners of Spokane county, by resolution duly passed and spread upon the records, decided to submit to the voters of the county named the question of whether such board should be authorized to issue negotiable coupon road bonds of the county to the amount of $3,250,000 for the purpose of establishing and improving certain designated roads and improving certain roads then duly established. By resolution it was proposed to issue the bonds in series; specifically it was proposed to issue the bonds to the amount of $450,000 in 1920; $550,000 in 1921; $650,000 in 1922; $750,000 in 1923, and $850,000 in 1924. The resolution also provided for the redemption of the bonds in series according to their issuance; specifically it was proposed to redeem the first series between the years 1925 and 1928, the second series between the years 1928 and 1932, the third series between the years 1932 and 1936, the fourth series between the years 1936 and 1940, and the fifth series between the years 1940 and 1943, by the payment on the principal thereof of certain fixed sums in each of the several years. A special election was called and notice thereof given in which the duration of the bonds was set forth in the following language: "Said bonds shall be payable within a period of twenty years from the date of their respective issues."

At the election the requisite majority voting approved the issuance of the bonds.

Thereafter the county commissioners offered for sale the first series proposed to be issued, when the state board of finance made a bid for the bonds offering to take them at par, the bid being, however, conditioned upon the approval of the *Attorney General* of the validity of the proceedings leading up to the issuance of the bonds. When the transcript of the proceedings was submitted to the *Attorney General,* that officer refused to approve their legality, basing his objections upon the insufficiency of the election notice, the objection being that the duration of the bonds and the fact that it was proposed to issue them serially was not stated therein; whereupon the relators brought this action as an original proceeding here, seeking a peremptory writ of mandate directed to the state auditor requiring him to accept the bonds and deliver to relators a warrant drawn on the state treasurer for the value thereof, according to the terms of the bid of the state board of finance.

We are well aware that the courts generally more strictly construe statutory provisions authorizing the issuance of bonds in actions to prevent such issuance than is done in actions to prevent the payment of such bonds after they have been issued and negotiated. Cases are numerous in which it is held that the only power to issue bonds is derived from the statute, and any precedent condition which the statute imposes must be complied with fairly and substantially, and the voters are not empowered to delegate the power which belongs to them to the officers of a municipality to be exercised in their discretion. *Stern v. Fargo,* 18 N. D. 289, 122 N. W. 403, 26 L. R. A. (N. S.) 665. Following this rule, the supreme court of Montana, under a statute requiring the notice of election to give the amount, the rate of interest, the time when payable, and the time when redeemable and the purpose for

which the bonds are to be issued, held that a notice wholly omitting the rate of interest, time when payable, and the time when redeemable, was insufficient. *State ex rel. Stanford v. School Dist. No. 1 of Cascade County,* 15 Mont. 133, 38 Pac. 462.

The supreme court of Oregon under a statute which required the specifications of "the length of time they (the bonds) shall run," held that, the specification "to run not to exceed twenty years each" was insufficient. *Elliott v. Tillamook County,* 86 Ore. 427, 168 Pac. 77. The reasoning in these and kindred cases might apply here were our statute in the same language, though possibly the fact that the notice as published here refers to the resolution of the board of county commissioners calling the election, in which was contained the details of the plan for issuing the bonds serially and retiring them as hereinbefore stated, to which, as a public record, all had access, should have some weight. The statute under which relators as county commissioners here acted, is Rem. Code, § 5101-4, which reads as follows:

"The commissioners must give notice in some newspaper having a general circulation in said county for a period of at least four (4) weeks next preceding the date of the election, setting forth the proposition as to amount and duration of the bonds to be issued, and the rate of interest thereon which is not to be exceeded, and stating in such notice the road or roads to be built or improved. Such notice need not describe the road or roads with particularity, but it shall be sufficient either to describe the same by termini and with a general statement as to the course of the same, or to use any other appropriate language sufficient to show the purpose intended to be accomplished. The commissioners may, at their option, give such other or further notice as they may deem advisable. When the bonds are issued they may be made to bear the rate of interest stated in the notice or any less rate."

The question here to be determined is just what is meant by the word "duration" as there used. Webster's New International Dictionary defines the word as "state or quality of lasting; continuance in time; the portion of time during which anything exists." Thus, we see, as compared to the language used in the statutes of Montana and Oregon, the word "duration" is a general term, and assuming, as we must, that it was used advisedly in the statute, it follows that, if the legislature had considered the naming of a time certain when each bond would be payable and redeemable a matter of such importance as is here contended, it would have expressed itself in clear and specific terms. We are the more inclined to this view, because it is a matter of common knowledge that the voter is principally interested in the amount of the proposed bond issue, the rate of interest which it bears, and the purpose for which the money so raised is to be used, and but seldom indeed is the average voter sufficiently familiar with the methods of taxation to express an opinion upon the plan by which it is proposed to retire the indebtedness. In fact, all too seldom does the voter consider that a day of settlement must come, being generally far too prone to trust public officers to work out that problem, and usually he only resents conditions when it is too late to remedy them. The cure for this, however, lies in educating the voter up to his responsibility and not in defeating his will when fairly expressed at the polls.

We must assume that the legislature had in mind the conditions as they exist, and under those conditions deemed a general description of the life of the bonds sufficient, instead of a more specific one. We find no decided cases which directly meet the point here in issue, but the following in principle support our views: *City of Oswego v. Davis,* 97 Kan. 371, 154 Pac. 1124;

*Town of Lumberton v. Nuveen & Co.,* 144 N. C. 303, 56 S. E. 940; *Fishblatt v. Atlantic City,* 78 N. J. L. 134, 73 Atl. 125; *North v. McMahan,* 26 Okl. 502, 110 Pac. 1115; *Chicago B. & Q. R. Co. v. Wilber,* 63 Neb. 624, 88 N. W. 660; *Knight v. Town of West Union,* 45 W. Va. 194, 32 S. E. 163; *Village of Bronxville v. Seymour,* 122 App. Div. 377, 106 N. Y. Supp. 834.

In the Kansas case above cited, it is made to appear that the statute under consideration required the notice to state the amount of the bonds to be issued, while the notice as published named an issue not exceeding $30,000; and the notice was held sufficient upon the theory that the public officers, if prudent, would keep the expenditures as low as possible and would issue no greater amount in bonds than would be necessary to accomplish the purpose sought. So here, the county commissioners, if prudent, will retire the indebtedness at as early a time as may be done without casting an undue burden upon the taxpayers, because an early retirement means a saving in interest payments, and is to the ultimate benefit of those who must pay the debt. The court says in the Kansas case, however:

"It should be added, however, that in so important a matter as the issue of municipal bonds, the statutes authorizing them should be carefully studied and closely followed in all proceedings leading up to their registration. It ought to be the pleasure and pride of municipal officers that in matters like these their work has been so thorough and precise that the registration of their municipal bonds goes through without a hitch, rather than to have them merely 'scrape through' on a test case on the ground that the proceedings are not altogether so irregular as to vitiate them."

We reiterate this warning, because unless great care be exercised cases will arise in which this court will be obliged to reach a result which may cause loss,

delay of needed improvements, and great public inconvenience not through any fault of the law.

Under the familiar legal rule that the greater always includes the less, we hold, then, that the language in the notice "said bonds shall be payable within a period of twenty years from the date of their respective issues," sufficiently gives and describes their duration, as that word is used in the statute here under consideration, and by the use of the language quoted the statute was fairly and substantially complied with.

The writ prayed for will issue.

HOLCOMB, C. J., PARKER, FULLERTON, and MITCHELL, JJ., concur.

BRIDGES, J. (concurring)—I think the statute vested in the board of county commissioners the power to determine the exact duration of the bonds authorized to be issued, and the question to be submitted to the voters was whether they would authorize the board to exercise such power. In other words, the voters are not to determine the date of issuance and the due date of the bonds, but are to determine whether they will authorize the board to so determine. Section 5101-1, Rem. Code, provides that the board may submit to the voters "the question whether the said board shall be authorized to issue negotiable coupon road bonds of the county" in certain amounts. Section 5101-2 provides that, if, at an election to be held, the vote is in favor of the issuance of such bonds, then the commissioners must issue them and "negotiate or float the same in such manner as they may deem to the best advantage for the county," but at not less than par, and that such bonds shall become payable "at such time as shall be stated therein, not more than twenty years after the date of issue," and shall bear interest at not to exceed six per cent per annum.

The proposition submitted to the voters was, in substance, shall the board of county commissioners be given the power to issue $3,250,000 of bonds at not to exceed six per cent interest, to be payable at such time within twenty years from the date of issuance, as the board might determine? To this proposition the voters assented. Upon this theory, the notice with reference to the duration of the bonds was, in my judgment, a substantial compliance with the statute. Almost all the cases cited as being in support of the idea that the notice was insufficient were under statutes which require the voters not only to determine the amount of the bonds to be issued, but also the interest they should bear and the time they should become payable. Such statutes did not vest any discretion in the board or other official body. It must act purely in a ministerial capacity, and it must receive its powers exactly from the vote of the people. Such are the cases of *Elliott v. Tillamook County,* 86 Ore. 427, 168 Pac. 77; *Village of Canandaigua v. Hayes,* 90 App. Div. 336, 85 N. Y. Supp. 488, and *Stern v. Fargo,* 18 N. D. 289, 122 N. W. 403, 26 L. R. A. (N. S.) 665. In the last case, the court said:

"The voters were to determine the amount by voting for a resolution definitely fixing the amount or defeat any issue of bonds by voting against it. They were not to be called to delegate the power to the township committee to issue, in their discretion, bonds to the amount of $500 or $5,000. Under this statute no such discretionary power could be vested in the township committee . . . The power was vested here solely in the voters and they could not, as they did, by voting upon this resolution submitted to them, under the statute, for their determination, delegate the power to the township committee of exercising a discretion as to the amount. After the election, upon a proper resolution, the action of the township committee could

only be ministerial so far as the amount to be issued was involved.''

It was upon the distinction I have attempted to draw that the election was upheld in the case of *Town of Lumberton v. Nuveen & Co.,* 144 N. C. 303, 56 S. E. 940. See, also, *Oswego v. Davis,* 97 Kan. 371, 154 Pac. 1124.

By the express provisions of the notice calling the election, the commissioners asked permission to exercise their judgment in determining when the bonds should be actually negotiated, and when they should become payable, which period, in all events, was to be within twenty years from date of issuance. This permission was given by more than the requisite number of voters; the commissioners now have the right to exercise the power so given.