[No. 16516. Department One. May 6, 1921.]

P. S. BROOKE, *Appellant*, v. DAVID T. HAM *et al.,*
*Respondents.*[1]

ELECTIONS (11)—SPECIAL ELECTIONS—BOND ISSUES—NOTICE—PUB-
LICATION AND POSTING. The character of notice to be given to a
special election to authorize the issuance of road improvement bonds
is governed by the special provisions of the law authorizing the is-
suance of such bonds (Rem. Code, § 5101) and not by the provisions
of Id., § 4784, as amended by Laws 1919, p. 470, § 12, since the latter
law applies only to the notice to be given of special elections for
the purpose of filling vacancies in office.

Appeal from a judgment of the superior court for
Spokane county, Oswald, J., entered March 26, 1921,
denying the relief prayed for, in an action to enjoin the
issuance of road improvement bonds, tried to the
court. Affirmed.

*Hamblen & Gilbert,* for appellant.

*The Attorney General, Fred J. Cunningham, Assist-
ant, William C. Meyer,* and *Clarence A. Orndorff,* for
respondents.

PARKER, C. J.—The plaintiff Brooke, a resident and
taxpayer of Spokane county, commenced this action
seeking a decree enjoining the defendants, as officers
of that county, from issuing and offering for sale cer-
tain road improvement bonds of the county, which they
purpose and claim the right and authority to do in
pursuance of the expressed will of the voters of the
county at a special election. Trial upon the merits in
the superior court resulted in a judgment denying to
the plaintiff the relief prayed for; from which he has
appealed to this court.

The particular proposed bond issue here in question
is the second installment, to wit, $550,000, of $3,250,000

[1]Reported in 197 Pac. 917.

of road improvement bonds, the issuance of which is claimed by respondents, county officers, to have been duly authorized by the voters of the county at a special election held on July 1, 1919, under the provisions of Laws of 1913, ch. 25, p. 62; Rem. Code, § 5101. The first installment, to wit, $450,000, of the bonds so authorized to be issued, were held by us to be legally issued, by our decision in *State ex rel. Spokane County v. Clausen*, 110 Wash. 112, 188 Pac. 23.

The contention here made by counsel for appellant is that the special election was void and of no effect as an authorization for the issuance of any of the bonds, because of want of proper notice thereof to the voters of the county; in that, while it is conceded that the notice was in all respects given as prescribed by Laws of 1913, ch. 25, p. 62, relating especially to the issuance of county road improvement bonds, it was not given as prescribed by Rem. Code, § 4784, as amended by Laws of 1919, p. 470, § 12, ch. 163, relating generally to general and special elections. So our problem is simply this: Is a compliance with the special county road improvement bond law of 1913, insofar as it relates to notice of elections held thereunder, all that is legally necessary to be done in that behalf, without giving such additional notice of a special election under that law as is prescribed by Rem. Code, § 4784, as amended by the act of 1919, relating generally to general and special elections? More particularly, is it legally necessary that notice of this special election be given by posting notices in the several precincts of the county as prescribed by Rem. Code, § 4784, as amended by the act of 1919? It is conceded that such posting was not done preceding this special election. This question was not presented to or considered by us in *State ex rel. Spokane County v. Clausen, supra.*

The act of 1913 is manifestly a special, original independent act, relating to the issuance of county road improvement bonds when authorized by the voters of the county at an election held for that purpose; the expenditure of the funds so raised, in road improvements; the levying of taxes to pay the interest and principal of the bonds; and the final redemption of the bonds. Section 2 of the act reads in part as follows:

"Such election may be held at the times and in the manner provided for holding general elections in this state, or it may be held as a special election at such time as the board of county commissioners may designate." (Laws 1913, p. 63, § 2, ch. 25.)

Section 4 of the act reads in part as follows:

"The commissioners must give notice in some newspaper having a general circulation in said county for a period of at least four (4) weeks next preceding the date of the election, . . . . The commissioners may, at their option, give such other or further notice as they may deem advisable." (Laws 1913, pp. 65, 66, § 4, ch. 25.)

There is no other language of the act touching the question of how the notice of the election shall be communicated to the voters. The county commissioners directed the publication of the notice of this election daily to be made in three daily newspapers published and of general circulation in Spokane county, for a period of over four weeks and in three successive weekly issues of seven weekly newspapers published and of general circulation in Spokane county, immediately preceding the election. This we must presume was done as directed; since no contention is made to the contrary, nor is there any contention made that the notice was in any respect defective in form or substance, insofar as we are concerned with the require-

ments of the special county road improvement bond
act of 1913. Thus it is plain that if the notice required
by the terms of that act is all that was legally neces-
sary to be done in that behalf, to lawfully authorize
the issuance of the bonds, their issuance cannot now
be enjoined for want of proper and sufficient notice of
the election at which the voters authorized their issu-
ance.

Was there a failure of due and legal notice of the
election because of failure to post notice thereof in the
several election precincts as prescribed by Rem. Code,
§ 4784, as amended by Laws of 1919, p. 470, § 12, ch.
163, relating generally to general and special elec-
tions? That section, as so amended, reads as follows:

"It shall be the duty of each county auditor to give
at least thirty days' notice of any general election,
and at least fifteen days previous to any special elec-
tion, by posting or causing to be posted up, at each
place of holding election in the county, a written or
printed notice thereof; said notice to be as nearly as
circumstances will admit, as following:

"Notice is hereby given that on the . . . . . . day of
. . . . . . next, at . . . . . . in the . . . . . . district or precinct
of . . . . . ., in the county of . . . . . ., an election will be
held for state, county, town, or district officers (naming
the offices to be filled, as the case may be), which elec-
tion will be opened at eight o'clock in the morning, and
will continue until eight o'clock in the evening of the
same day.

"Dated this . . . . . . day of . . . . . ., A. D. 19. . .
                              "A. B., County Auditor."

The amendment made no change in the amended
section save as to the hours during which the polls
should remain open upon election day. Otherwise the
amended section has remained unchanged since 1881,
when it became a part of the code of that year as § 3060
in a chapter relating generally to elections. The words

"special election," found in that section as existing prior to its amendment by the act of 1919, seem to us to plainly relate only to special elections of persons to office. This is not only evidenced by the words of the prescribed form of notice to be posted, but also by the language of another preceding section of the same chapter relating generally to elections, to wit, Code of 1881, § 3056, being Rem. Code, § 4782, which reads:

"Special elections are such as are held to supply vacancies in any office, whether the same be filled by the vote of the qualified electors of the state, or any district, county, or township, and may be held at such times as may be designated by the proper officer."

So we have the words "special election" as used in the Code of 1881, § 3060, and Rem. Code, § 4784, as amended by Laws of 1919, p. 470, § 12, expressly defined by the language of another section of the same law in which it has been so used since 1881. It seems quite plain to us that the amendment of 1919, changing the section only insofar as it changed the hours during which the polls should remain open upon election day, does not evidence a legislative intent to give the words "special election" as there used any different meaning than must have always been attributed to them in the law wherein they are found since 1881; and hence those words, as there used, have no reference to special elections for any purpose other than special elections "to supply vacancies in any office." Since it is apparent to us that the county road bond act of 1913, under which the election here in question was held, is a special act complete within itself, purporting, in Laws of 1913, pp. 65, 66, § 4, to cover the whole subject-matter of the giving of notice of the election, it follows that compliance therewith was all that was legally required. Plainly the manner of communicating the

notice of this election to the voters met the require-
ments of that act. It was not only a substantial com-
pliance, but was more than a strict legal compliance
therewith. Whatever notice of the election should have
been given in addition to publication, "in some news-
paper having a general circulation in said county for
a period of at least four weeks next preceding the date
of the election," was wholly a matter of discretion on
the part of the county commissioners. Manifestly,
such discretion was wisely exercised touching this
election. Aside from the strictly legal questions here
presented, the facts here apparent argue all but con-
clusively in support of the fairness of the election and
the good faith of the county officers in giving due notice
thereof. The judgment is affirmed.

FULLERTON, TOLMAN, HOLCOMB, and MITCHELL, JJ.,
concur.