## CITY OF CHEYENNE ET AL. v. STATE EX REL. E. H. ROLLINS & SONS.

MUNICIPAL BONDS—CONSTRUCTION OF STATUTE AUTHORIZING THEIR ISSUANCE—NOTICE SUBMITTING QUESTION TO ELECTORS—SUFFICIENCY.

1. A statute prescribing what shall be stated in a proposition submitted to a vote of the electors of a city for the issuance of bonds should be given such a construction as will not defeat the manifest object of the provision.

2. A substantial compliance with the formalities of the statute is generally sufficient in submitting the question of a bond issue to a vote of the electors of a municipality.

3. Under a statute authorizing incorporated cities and towns to issue bonds for certain public improvements, and providing that no such bonds shall be issued until the proposition to issue the same shall have been submitted to the qualified electors of the city or town, the proposition so submitted to "specify the amount of bonds proposed to be issued, the rate of interest and the purpose for which it is proposed to issue the bonds," it is *held* that the rate of interest was sufficiently specified by an ordinance and notice submitting such a proposition which stated that the bonds to be issued were to "bear interest at a rate not exceeding five per cent per annum."

[Decided June 26, 1908.]                    (96 Pac. 244.)

ERROR to the District Court, Laramie County; HON. RODERICK N. MATSON, Judge.

Mandamus to require the issuance to the relator of certain city bonds. The material facts are stated in the opinion.

*William A. Riner,* City Attorney, for the plaintiffs in error, cited Hillsborough County v. Henderson, 45 Fla. 356.

*C. W. Burdick, Herbert V. Lacey,* and *John W. Lacey,* for defendant in error.

The only authority cited by the City and its officers in the court below, is the case of Hillsborough v. Henderson, 45 Fla. 356. The Florida statute requires that the notice shall "determine" the rate of interest. Our statute is that

it shall·"specify" the rate. The Florida case, therefore, seems fairly in point, provided the word "determine" is identical with the word "specify." We do not contend that there is any great difference between these two words. Whatever difference there is in strength between them is on the side of "determine," because that word requires the final exercise of all judgment and discretion somewhat more fully than the word "specify." But for the purposes of this case the Florida case will be discussed as though it were upon our exact statute.

That case cites a number of cases, but not one of them upon the question here involved. They are all upon failures to observe provisions of a very different kind in the statute conferring authority to bond. Not only so, but in each of the cases cited the failure was of a matter which was substantial in character and calculated to affect the election. For example, in State v. School District, 15 Mont. 133, nothing was said in the notice concerning the rate of interest, the time when the bonds were payable, or the time when they were redeemable, although the statute required each of these things to be stated. In a case cited from New Hampshire, the notice did not designate which of two railroads should be the beneficiary of the aid to be donated, though the statute required the beneficiary to be designated. Here again the matter was substantial. In the case of Smith v. Dublin, (Ga.) 39 S. E. 327, the notice did not specify the purpose for which the funds should be used, although the statute required that it should specify the purpose. In the case of State v. Roggen, (Neb.) 34 N. W. 109, the donee of the aid voted was not designated. That the question arising under that case was entirely different from the question which arises here is made even more apparent by the decision of the same court in the case of Bank v. Omaha, hereafter cited. In Elyria G. & W. Co. v. Elyria, (57 O. St.) 49 N. E. 535, two different propositions, viz.: to purchase water works and to build new ones, were sub-

mitted together, and this was held invalid because the law required different proceedings for each, and for the further reason that the notice did not give the voter the opportunity to vote for one of the propositions and against the other if he cared to do so, and the law required that this opportunity should be afforded. Again the Florida case is very much weakened by the fact that the Legislature of that State found it necessary to overrule the decision by passing an act legalizing the bonds which were the subject of the controversy in that case. (Givens v. Hillsborough Co., (Fla.) 35 So. 88.)

Many states, and among them Florida, hold that the constitution of the state and the legislation manifest a clear and definite policy to discountenance municipal bonding, and on this ground the municipality is held to the very strictest compliance with all of the requirements of the statute. The tendency in recent years in most of the states has been in the direction of requiring only substantial compliance, especially where the objects to be accomplished by the indebtedness are favorites of the law. By our State Constitution the matter of providing water for municipal corporations and incurring indebtedness therefor is favored and not at all discountenanced, and the right to bond for this special purpose is taken out of the usual limitations. (Const., Art. 13, Sec. 5; Art. 16, Sec. 5.) This same favor to this particular purpose is shown by the legislation of the State. (Rev. Stat. 1899, Sec. 1735, par. 2; Secs. 1737-1742.)

The very great weight of authority even where the debt is for matters less favored than in the case at bar, is to the effect that not exceeding a stated sum, or not exceeding a stated rate is a designation of the amount in the one case or the rate in the other. (Knight v. West Union, (W. Va.) 32 S. E. 163; Bank v. Omaha, (Neb.) 18 N. W. 63; Board v. Tollman, 145 Fed. 753, 771.)

In the case at bar, under the authorities cited, if the notice had stated definitely the rate 5 per cent without the words "not exceeding," not only would it have given to the council and the officers of the City authority to contract at a less rate, but it would have devolved upon those officers the duty to contract at the less rate.  $160,000.00 was to be raised by the bonds.  The officers could not, therefore, reduce the rate of interest to such extent as would prevent obtaining the full face of the bonds.  And this is again made clear by Section 1706 which prevents the selling of the bonds at less than par.  But not only would the City officers have been authorized by the fixed rate of 5 per cent in the notice to contract at a less rate if they could, but it would have been a clear duty so to contract at the less rate.  Manifestly, therefore, the placing the words "not exceeding" in the notice which the law places there, whether expressed or not, cannot be held to make the notice void.  (Lumberton v. Nuveen, (N. C.) 56 S. E. 940.)

POTTER, CHIEF JUSTICE.

This is a suit in mandamus brought originally in the District Court of Laramie County to require the city of Cheyenne, its Mayor, Clerk and Treasurer, to issue and deliver to the relators, E. H. Rollins & Sons, a corporation, certain water works extension bonds to the amount of one hundred and sixty thousand ($160,000.00) dollars, bearing interest at the rate of five per cent per annum.  The matter was heard in the district court upon a demurrer to the petition and the same was overruled, whereupon, the defendants below, plaintiffs in error here, declining to plead further, a judgment was entered ordering that the alternative writ of mandamus which had been issued at the commencement of the suit should be made absolute, and directing the issuance and delivery to the relator of the bonds in question.  From that judgment the case is brought to this court on error.

The assignments of error are: 1. That the court erred in overruling the demurrer of plaintiffs in error. 2. That the court erred in rendering judgment in favor of the defendant in error.

It is admitted that the petition filed in the district court sets forth all the facts necessary to a determination of the cause, and that the demurrer, therefore, raised every question to be presented in the case involving the validity of the bonds and the duty of the plaintiffs in error to issue and deliver them as prayed for. The relator is alleged to be a corporation duly organized and existing under the laws of the state of Maine and authorized to do business in this state, and especially authorized to buy and sell bonds or securities of the character of those here involved; that the City of Cheyenne is a duly constituted and chartered municipal corporation of this state; that the other named defendants in the petition are the duly elected, qualified and acting Mayor, Clerk and Treasurer, respectively, of the said city; that for the proper protection of the said city and its inhabitants, the necessary construction and additions to the water works and water storage system of said city requires the expenditure of a sum not less than one hundred and sixty thousand ($160,000.00) dollars; that an ordinance of said city was duly and regularly passed by the city council on the 17th day of September, 1907, and approved by the mayor on September 19, 1907, reciting the necessity for borrowing money for making extensions of the system of water works of said city, and the statutory authority given to the said city to borrow moneys for such purposes, and ordaining:

"That at the annual election to be held in the City of Cheyenne on the first Tuesday after the first Monday in November, A. D. 1907, there shall be submitted to a vote of the qualified electors of said city, a proposition to issue the coupon bonds of the said city in the amount of one hundred and sixty thousand dollars ($160,000.00) for the purpose of providing funds to extend the system of waterworks of said city, said bonds to be issued in accordance

with the provisions of Section 1705 of the Revised Statutes of 1899, and to bear interest at a rate not exceeding five per cent per annum."

It is further alleged in the petition that after the passage of said ordinance, and at the proper time and times, the city caused a notice of said annual election to be duly and properly published, and in proper and sufficient newspapers, which said notice contained the following:

"Notice is also given that at said annual election there will be submitted to the qualified electors of said city the proposition to issue the coupon bonds of said city in the amount of one hundred and sixty thousand dollars ($160,-000.00) for the purpose of providing funds to extend the water works of said city; said bonds, if voted, to be issued in accordance with the provisions of Section 1705 of the Revised Statutes of Wyoming, 1899, and to bear interest at a rate not exceeding five per cent per annum."

The election is alleged to have been properly held, that a large and full vote upon said proposition was had thereat, that the same was duly and regularly canvassed, and that the proposition was carried by a majority of more than six-sevenths of the voters who voted upon the proposition. That after said election an ordinance of the city was duly and regularly introduced and passed authorizing the issuance of said water works extension bonds to the amount aforesaid, "the same to bear interest at the rate of five per cent per annum." The said ordinance provided that said issue of bonds should consist of three hundred and twenty bonds of five hundred dollars each, dated January 1, 1908, becoming due January 1, 1938, that the interest should be paid annually, and that each and every of said bonds should be redeemable at the pleasure of said city at any time after January 1, 1918; that the bonds should be signed by the mayor and treasurer of said city, and attested by the city clerk under the corporate seal. The ordinance provided the form of the bonds as well as the coupons, and also for the proper certificate to be indorsed thereon to the effect that they were issued pursuant to

law and within the debt limit imposed by the constitution and laws of this state.

It is alleged that after the passage and approval of the last mentioned ordinance and after an advertisement of the sale of the said bonds pursuant to a resolution of the city council, the said city accepted the bid of the relator for all of said bonds, which said bid was for a price above par at the rate of interest above named, and a price which the said city was authorized by law to accept; and which said bid it is alleged was the highest and best bid for said bonds which was not withdrawn, and further, that the city is not able to sell said bonds or any of them to any other bidder at a higher price than the price offered by the relator. It is alleged that the relator is able, ready and willing to take said bonds and pay the price so as aforesaid bid by it, but that though the city and its said officers respectively, were requested to issue and deliver said bonds they have failed, and continue to refuse and fail, to issue the same, pretending that the proceedings authorizing the issuance of said bonds are invalid for the reason that the notice of election "failed to specify the rate of interest which said bonds should bear," and it is averred that the said pretense of invalidity in the proceedings is not well founded in fact or law.

It is conceded that the petition fully and correctly sets forth the reason for the failure and refusal of the city authorities to issue and deliver the bonds in accordance with the accepted bid of the relator, and that the sole question affecting the validity of the bonds and the right and duty of the city and its said officers to issue and deliver the same is whether in the ordinance first above mentioned and in the notice of the election, the rate of interest was sufficiently specified by the statement that they were to "bear interest at a rate not exceeding five per cent per annum."

The statute, in Section 1704 of the Revised Statutes of 1899, confers upon each incorporated city or town in this state the power and authority "to construct, purchase, ex-

tend, maintain and regulate a system of water works," &c. Section 1705 provides that for the purpose of providing funds for constructing, purchasing, extending or maintaining a system of water works, as authorized by the preceding section, any incorporated city or town is authorized to borrow money and to issue coupon bonds of such city or town, each of said coupon bonds to be of the denomination of one hundred dollars, or five hundred dollars, as the city or town council shall determine, which said bonds shall be numbered consecutively from one upwards, payable in thirty years from date of issue, redeemable at the pleasure of such city or town after ten years, and shall bear interest at a rate not exceeding six per cent per annum, payable annually on the first day of January in each year, and at such place or places as shall be designated by the city or town council, and which said bonds shall be signed by the mayor and treasurer of such city or town, and attested by the clerk. And it is further provided that such bonds shall not be sold for less than their par value.

Section 1708 provides as follows:

"No bonds shall be issued for the purpose provided by this chapter until the proposition to issue the same shall have been submitted to a vote of the qualified electors of such city or town, and by them approved; such proposition to be so submitted at any annual election or at a special election to be called for that purpose; * * * * The proposition so submitted to a vote of the qualified electors shall specify the amount of bonds proposed to be issued, the rate of interest and the purpose for which it is proposed to issue the bonds. * * * * If a majority of the votes cast upon the proposition shall be for the bonds, then such proposition shall be deemed to have been approved by the people."

It is provided in Section 1712 that any incorporated city or town is authorized and empowered to enact ordinances necessary to a complete exercise of the powers granted in the chapter containing the sections herein referred to.

(4)

The question thus submitted for our determination seems to have been directly passed upon in only a few reported cases. · The plaintiffs in error rely solely in opposing the validity of the bonds, upon the case of Hillsborough County v. Henderson, 45 Fla. 356, 33 So. 997, decided by the Supreme Court of Florida in 1903. It appears from the opinion in that case that the statute required the resolution of the county commissioners submitting the proposition to issue bonds to the voters of the county to "determine the rate of interest to be paid on the bonds." The resolution submitted to the voters provided for bonds "bearing interest at a rate of not more than 4 per centum per annum, with interest payable annually." It was said by the court that if the resolution did not determine the rate of interest which the bonds should bear, it would be fatally defective. In discussing the question the court construed the word "determine" to mean "to ascertain definitely," or, "to settle"; and it was said that in that sense the word was used in the statute, and that "a provision which leaves for future determination the precise rate of the interest to be paid, merely limiting the range of the discretion to be exercised by those who shall ultimately fix it, can not be said. to determine the rate." It was held that the statute had not been complied with.

In Nebraska the question arose whether bonds could be legally issued to bear interest at 5 per cent per annum where the proposition submitted to and approved by the voters provided for 6 per cent. A question of statutory construction does not seem to have been involved, though it was apparently assumed that the validity of the issue depended upon a fair and intelligent submission of the proposition to the vote of the electors, and that the authority must be found in the vote of approval. It appears that the city authorities of the City of Omaha submitted to the electors of the city a proposition for the issue of bonds to the amount of $100,000, for the paving of the streets of said city, the bonds to run twenty years, to be sold for not less than par and to draw interest at 6

per cent, payable semi-annually. The proposition was adopted, and the mayor and council having ascertained that bonds at a less rate of interest than six per cent could be sold at their face value, issued said bonds providing for interest at five per cent, but conforming in all other respects to the proposition as adopted by the electors. The court stated the question for decision as follows: "Did the insertion of a less rate of interest in the bonds than was provided in the proposition affect their validity, the bonds at a reduced rate bringing more than their face value?" The bonds were held to be valid, and the court said:

"The general rule is that all contracts made by municipal officers in excess of their powers are void; and the rule applies to municipal bonds. In the case under consideration, however, the power to issue bonds of the kind actually issued and sold was expressly conferred, except as to interest. Under that power, bonds for a greater rate of interest than 6 per cent could not legally be issued, because the greater rate of interest would be in excess of the authority conferred. The officers issuing the bonds are public agents of the city, and must act within the scope of their authority. This authority is in the nature of a power of attorney to issue bonds of a certain description in the name of the municipality to raise a definite sum for the use of the city for a specified purpose. The object was to raise $100,000. If this can be done for a less interest than the agents were authorized to pay, the city is benefited to that extent, and the contract is not *ultra vires*. It is a fundamental principle of the law of agency that it is the duty of the agent to protect and advance the interests of his principal. That the proper authorities of the city of Omaha have done in this case, and their acts in issuing the bonds in question being within the scope of their authority, the bonds are valid." (Omaha Nat. Bank v. Omaha, 18 N. W. 63, decided in 1883.)

A statute of North Carolina authorizing a town to issue bonds for certain purposes provided that the notice

submitting the matter to the electors should "set forth the object for which bonds are to be issued, the amount of the same, the rate of interest, the time when they mature, and the rate of tax to be levied to pay the principal and interest upon the bonds." The authorities of the town thus authorized to issue bonds stated in the notice for the election as follows: "The said bonds, if issued, to bear interest at a rate not exceeding 6 per cent per annum, payable annually." The validity of the bonds was contested, apparently prior to the delivery of the bonds, or at least the right of innocent purchasers does not seem to have entered into the determination of the question. The fact that the rate of interest was stated as above, viz.: Not exceeding 6 per cent per annum, was held not to invalidate the bonds. The court said: "A majority of the qualified voters under the terms of said act, enacted in strict conformity to the statute, authorized the issue of bonds upon a 6 per cent basis. The commissioners are vested with full power to fix the rate of interest provided it does not exceed 6 per cent. This is not only true under the terms of the notice, but Section 1 of the act expressly confers such discretion. The record shows that the bonds are to bear interest at five and one-half per cent." (Town of Lumberton v. John Nuveen, &c., Co., (N. C.) 56 S. E. 940.)

In the Nebraska and North Carolina cases above cited it appears that the rate of interest was finally fixed at a less rate than the maximum rate submitted to the voters, and yet the bonds were held valid. The words "set forth" in the statute of North Carolina and the word "specify" in our statute, seem to have been used in the same sense, and to accomplish the same purpose, and are entitled, we think, to a similar construction in respect of the acts which will constitute a compliance with the statutory requirement. If the Florida case is not distinguishable from the one cited from North Carolina by reason of the word "determine" found in the Florida statute, then the two cases are opposed to each other. It may be stated that the legislature of

Florida enacted a law curing the adjudged invalidity of the bonds under consideration in the Florida case, and that curative law was held valid. (Givens v. Hillsborough County, 35 So. 88.)

In a case decided in Illinois in 1872, the court took a middle ground upon the question, as between that taken in Florida on the one hand, and North Carolina on the other. The statute contemplated, as stated by the court, that the propositions for the issue of bonds submitted to the popular vote should specify the rate of interest the bonds were to bear. A proposition was submitted and approved specifying that the bonds were to bear "not to exceed ten per cent interest." The statute provided that the bonds, if voted, should be issued bearing interest at ten per cent per annum. The county sought to fix a less rate than ten per cent after the approval of the proposition submitted as aforesaid. The court recognized, notwithstanding the statutory provision as to rate of interest, that it would have been lawful to submit a proposition for a less rate and that the bonds might lawfully bear such less rate if accepted by the railroad company in whose aid they were to be issued. But as the proposition submitted and approved specified no different rate, though the rate was specified as not to exceed ten per cent, it was held that the action of the voters must be construed as an assent to the issue of bonds bearing the maximum rate submitted, that being the rate prescribed by the statute; and a mandamus was awarded requiring the bonds to be issued bearing ten per cent interest. (People ex rel. v. Supervisors, &c., 63 Ill. 142.)

The case cited from Illinois as well as the North Carolina case would seem to support the validity of the bonds here under consideration, since the rate of interest was finally fixed by the ordinance of the city at five per cent, the maximum rate submitted by the first ordinance and approved by the electors. Upon principle the decision in the Nebraska case is also to be regarded as sustaining the suf-

ficiency of the vote of the electors to authorize the issuance of the bonds at such maximum rate of interest.

Such a construction of the statute should be adopted as will not defeat the manifest object of the provision. It is held generally that in submitting the question of a bond issue to a vote of the electors, a substantial compliance with the formalities of the statute is sufficient. (11 Cyc. 557; 21 Ency. L., (2nd Ed.) 47; R. R. Co. v. Commissioners, 116 N. C. 563; Blakey v. City Council of Montgomery, (Ala.) 39 So. 745; People ex rel. v. Counts, (Cal.) 26 Pac. 612.) In the case last cited it was said in reference to the statute which required the board to specify the particular purpose for which the indebtedness is to be created, and the amount of the bonds, that its object "is simply to notify the electors of the county of these facts, to the end that they may be enabled thereby to form an intelligent judgment as to the propriety of creating the proposed indebtedness for such purpose." In Blakey v. City Council, &c., *supra,* it appears that a statute required that the bonds issued under it should be coupon bonds, and the ordinance there under consideration provided for either coupon or registered bonds; and the proposition was in that manner submitted to the voters. It was contended that the bonds were invalid because the character of the bonds, whether they should be coupon or registered bonds, was stated in the alternative. It did not appear that the bonds which had been prepared and offered were not coupon bonds as required by the statute. The court said, with reference to the fact that the ordinance calling the election provided for either coupon or registered bonds, at the option of the holder: "The purpose of the election provided for by the constitution and by the act was to give the voter the privilege of saying whether or not the bonds should be issued." And it was held that the matter so complained of was nothing more than an irregularity and would not invalidate the bonds.

In California, where, after the submission of a proposition to issue bonds and an approval thereof by the voters,

a change was made by the corporate board in the number and denomination of the bonds, the number and denomination as finally fixed being within the limitation of the statute, it was held that the departure would not invalidate the bonds, the court saying: "The change did not affect the validity of the bonds, and, as no greater burden is imposed upon the taxpayers, the appellant cannot complain." It was an amicable suit at the instance of a taxpayer to determine the validity of the bonds. (Derby v. City of Modesto, 104 Cal. 522, 38 Pac. 900. See also Law v. San Francisco, (Cal.) 77 Pac. 1014.)

It is held generally in the absence of a statute prescribing the contents of the proposition to be submitted that it is necessary to state the amount of bonds to be issued. And where the amount bears a substantial relation to the success of the proposed undertaking, so that it is reasonable to suppose that a voter would be more or less influenced in expressing his will by a consideration of the question whether the amount proposed would be sufficient to accomplish the purpose of the issue, and might be unwilling to vote a smaller amount deemed by him insufficient for such purposes, it is held that the statement of the amount in the proposition submitted should be precise and definite, leaving no discretion in the corporate authorities to issue bonds for a less amount. But in several cases where such a situation was not presented, or at least where there was no consideration of such condition, it has been held that the proposition was sufficiently definite which stated a maximum amount of issue only. Thus in one case a resolution submitted to the voters whether or not there should be issued bonds to the constitutional maximum, not in any event to exceed $10,000. It appeared that the limit under the constitution would be in round numbers $7,000. It was said in the opinion that, presumably, the trustees did not know, or were doubtful of, the exact amount for which bonds should be issued. The submission and approval were held sufficient to authorize the issuance of bonds up to the constitutional limit, not exceeding the amount

specified. (Arbuckle v. McKinney, (Ky.) 97 S. W. 408.)

In another a proposition was held sufficiently submitted which fixed the amount at a sum not to exceed $6,000. The court said in substance that the expression "not to exceed $6,000" was equivalent to stating the amount at $6,000, and that in either case it will be necessarily construed to mean that the council was authorized to issue bonds to the amount of $6,000, if necessary, for the purpose expressed in the ordinance; otherwise not." (Knight v. Town of West Union, (W. Va.) 32 S. E. 163.)

In another case an issue of bonds was held valid under popular approval of the proposition "to build new county buildings at a cost of not exceeding $30,000." (Hubbard v. Woodsum, 87 Me. 88.)

In another case a proposition was submitted to issue bonds not to exceed $4,000, and the issue up to that amount was held valid. (Calahan v. Handsaker, 133 Ia. 622.) It was held in Nebraska that a proposition to issue bonds was sufficiently definite which fixed the maximum amount to be issued, and vested authority in the village authorities to issue a less amount. (C. B. & Q. R. Co. v. Village of Wilber, 63 Neb. 624.)

We think it entirely clear that the object of the statute in requiring the proposition submitted to specify the rate of interest and the other matters required to be specified was to enable the voters to fairly and intelligently understand the character and extent of the liability proposed to be imposed upon the city as well as the purpose to which the money raised by the bonds is to be devoted, and we are unable to understand how any voter could be misled by reason of the rate of interest being specified as not to exceed 5 per cent per annum. It is impossible to conceive that a voter who voted for the bonds under the proposition as submitted, at least from the view of a taxpayer or citizen, would have voted against them had the proposition been more precise and definite as to the rate by stating it at 5 per cent per annum, leaving no discretion in the city authorities with reference to the rate.

In the Kentucky case above cited it was said with reference to the latitude left to the trustees: "They ought to be at liberty, within these limitations (constitutional) to make the best bargain with reference to the bonds and the rate of interest that the market affords; they being authorized to sell the bonds for the highest price obtainable, not less than the par value with accrued interest."

It would seem that no possible injustice or detriment can occur to the city or any taxpayer or citizen thereof by reason of the manner of stating the rate of interest in the proposition submitted or in which it was specified in the first ordinance adopted. At least the voters approved the proposition indicating that the bonds might bear interest at 5 per cent per annum, and this rate is within the statutory limit. It was subsequently provided that the bonds shall bear that rate of interest, and we think the statute should not be given such a literal or technical construction as would render the approval of the bonds otherwise regular inoperative upon the ground suggested.

We are of the opinion upon principle and authority, as well as upon a reasonable interpretation of the provisions of the statute, that the manner of specifying the rate of interest in the proceedings for the issuance of the bonds was sufficiently definite as to the rate of interest proposed, and that the objection here urged against the bonds is not tenable. The proceedings, therefore, must be held sufficient to authorize the issue of the bonds, and the judgment of the district court requiring their issue and delivery to the relator will be affirmed.

BEARD, J., and SCOTT, J., concur.