## TULLOCK v. DABOLING.

No. 6494—Opinion Filed June 13, 1916.

(158 Pac. 908.)

**Brokers—Right to Commission—Exchange of Properties.**

T., a broker, was employed by D. to find some one with whom D. could exchange a stock of merchandise for live stock. T. brought D. and H. together for the purpose of negotiating such exchange. After some negotiations the exchange fell through, because D. was not satisfied that the value of the live stock he was to receive in the proposed exchange was equal to the value of his stock of merchandise.

Held, that T. was not entitled to recover commissions from D. because of such proposed exchange.

(Syllabus by Rummons, C.)

Error from County Court, Pawnee County; George E. Merritt, Judge.

Action by R. H. Tullock against J. A. Daboling. Judgment for defendant, and plaintiff brings error. Affirmed.

L. V. Orton, for plaintiff in error.

L. N. Kimrey, for defendant in error.

Opinion by RUMMONS, C. Plaintiff commenced this action in a justice of the peace court in Pawnee county to recover from defendant the sum of $123 as commission for procuring for defendant a trade for defendant's stock of hardware and implements. The cause was tried on appeal in the county court, and at the conclusion of plaintiff's evidence the court sustained the demurrer of defendant thereto and directed a verdict for the defendant. Plaintiff brings this proceeding in error to reverse the judgment for defendant rendered by the court upon such directed verdict.

The record discloses that the plaintiff was a real estate broker living at Yale, Okla., and that the defendant was the owner of a stock of hardware, implements, and buggies at Hallett, Okla.; that the defendant employed plaintiff to procure a trade for his stock of goods, agreeing to pay a 3 per cent. commission. The plaintiff found one Hedges, who was the owner of 40 acres of land and some horses, mules, and cattle which he desired to trade for a stock of merchandise. Plaintiff brought defendant and Hedges together, and, after considerable negotiation, a tentative trade was orally agreed upon. Hedges made a list of the horses, mules, and cattle which he proposed to trade, together with the price thereof, and delivered the same to the defendant. The defendant invoiced his stock of goods, and the parties met at the store of defendant to conclude the trade. Hedges and his wife had signed and acknowledged a deed conveying the 40 acres of land to defendant, and he had the deed with him, ready for delivery, at the time of this meeting. Defendant sent for his attorney to prepare a contract covering the trade, and while the attorney was drawing the contract it was discovered that the list of property proposed to be exchanged by Hedges for defendant's stock of goods lacked $98 of equaling the invoice value of defendant's stock. Defendant refused to proceed with the trade or to execute the contract, unless Hedges paid him the $98. This Hedges refused to do. The trade was abandoned and never consummated.

Plaintiff seeks to maintain this action upon the theory that he found for defendant a purchaser ready, willing, and able to take his stock of goods upon the terms proposed by defendant, and that, when the defendant refused to consummate the trade, he became liable to plaintiff for the commission agreed upon. The difficulty of applying this rule lies in the fact that this was a trade, and not a sale. The evidence of plaintiff discloses that the only terms proposed by defendant were that he was desirous of trading his stock of goods for some horses and cattle. No definite proposition was made by defendant, and the only task imposed upon plaintiff by defendant was to find some one with horses and cattle with whom defendant could trade. The plaintiff brought the defendant and Hedges together, and most of the negotiations were directly between the parties. It is true that the evidence offered by plaintiff shows that the parties orally agreed that defendant would trade his stock of merchandise for the land, the horses, mules, and cattle listed Hedges, and it is argued by plaintiff that this constituted such a trade as to render the defendant liable for commissions when he repudiated it. On the other hand, it is argued by defendant that he is not liable because no written agreement was ever entered into by either of the parties to the trade. The tentative contract between the parties to the trade fell within the statute of frauds, both as to the land and as to the chattels, for the reason that the chattels were of a value in excess of the sum of $50. Therefore it follows that all of the talk between defendant and Hedges prior to the time of the drawing up of a written contract was merely a preliminary negotiation. The writ-

ten contract was never executed; therefore no trade was ever made. In this class of cases, the broker must procure a trade satisfactory to his principal in order to earn his commission, because the principal proposed no definite trade to the broker. We conclude, therefore, that the minds of the parties to this trade never met, and no trade was ever procured for the defendant by the plaintiff.

Plaintiff relies upon the case of Bleecker v. Miller, 40 Okla. 374, 138 Pac. 809. In that case, however, the principal fixed clear and definite terms for the sale of his property, and the broker procured a purchaser who accepted the terms proposed and offered to pay the price asked, but in the meantime the principal had sold the property to another and put it out of his power to carry out the deal. The broker was allowed to recover because he had found a purchaser ready, able, and willing to buy. In the case at bar the broker never found a satisfactory trade for his principal, and, being bound by the terms of his employment in this particular case to find a satisfactory trade, he was not entitled to his commission.

The judgment of the court below is right, and should be affirmed.

By the Court: It is so ordered.