[L. A. No. 5761. In Bank.—June 20, 1919.]

SEWARD COLE, Plaintiff and Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Defendants and Respondents; C. H. WADE, Intervener and Appellant.

[1] MUNICIPAL CORPORATIONS — CREATION OF MUNICIPAL IMPROVEMENT DISTRICT—ORDINANCE CALLING ELECTION—RECITAL OF RATE OF INTEREST ON INDEBTEDNESS—SUFFICIENT COMPLIANCE WITH STATUTE. An ordinance calling an election for the creation of a municipal improvement district which recites "that the maximum rate of interest to be paid on said indebtedness shall be six per centum (6%) payable semi-annually," sufficiently complies with the requirement of section 5 of the Municipal Improvement District Act of 1915 (Stats. 1915, p. 99), that the ordinance shall "recite" the rate of interest to be paid on the indebtedness.

[2] ID.—CITY OF LOS ANGELES—SUPREMACY OF LEGISLATIVE BODY IN MUNICIPAL AFFAIRS—AMENDMENT OF CHARTER—EFFECT UPON APPLICABILITY OF IMPROVEMENT ACT.—The amendment of the charter of the city of Los Angeles in 1917 by adding subdivision 51 to section 2, making the city independent of general laws relating to municipal affairs, did not have the effect of rendering the Municipal Improvement District Act inapplicable to such city, and where the legislative body thereof in the ordinances establishing the district expressly predicated its right to proceed upon such act and adopted

it as the mode and manner of issuing bonds for the improvement, it was bound to pursue that authority, unless by subsequent legislative act they made proper changes therein.

[3] ID.—RATE OF INTEREST ON INDEBTEDNESS—DEFECT IN NOTICE OF ELECTION — CURE BY LEGISLATIVE RATIFICATION.—The failure to correctly state the amount of interest in the notice of election under the Municipal Improvement District Act, if it be a defect, can be cured by legislative ratification.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

John Dennison for Plaintiff and Appellant.

Kemp, Mitchell & Silberberg for Intervener and Appellant.

Albert Lee Stephens, City Attorney, W. B. Mathews, Ray C. Eberhard and Lewis E. Whitehead for Defendants and Respondents.

WILBUR, J.—The plaintiff, a taxpayer, owning property within the municipal improvement district No. 1, of the city of Los Angeles, brings this action against the city of Los Angeles, its mayor, the members of the city council, the city clerk and city treasurer, to enjoin a bond issue of one million and twenty thousand dollars, in pursuance of an election held by the citizens of said district authorized by an ordinance of said city. Judgment was rendered in favor of the defendants, from which plaintiff appeals, relying upon two points: "First, that the ordinance calling the election failed to comply with the statute authorizing the creation of municipal improvement districts," and, second, that "the statute of 1915 under which the bonds were issued is not applicable to the city of Los Angeles." The statute under which the bond election was held was enacted in 1915 (Stats. 1915, c. 79, pp. 99–102). Section 5 of that act provides, among other things, that "The ordinance or resolution calling such election, shall also recite . . . the nature of the improvement work or public utility, contemplated thereby, the estimated cost thereof, the amount of the principal of the indebtedness to be incurred therefor, and the rate of interest to be paid on said indebtedness. . . . The maximum rate of interest to be paid on such indebtedness

shall be six per centum per annum, payable semi-annually.''
The ordinance of the city (No. 34,860, new series) calling the
special election under said statute recites in section 3 thereof:
''That the estimated cost of such proposed improvement is
one million and twenty thousand dollars; that the amount of
the principal of the indebtedness proposed to be incurred is
the sum of one million and twenty thousand dollars, and the
maximum rate of interest to be paid on said indebtedness
shall be six per centum (6%) payable semi-annually.''   The
point raised is that this provision of the ordinance fails to
comply with the requirement of the statute that the ordinance
calling the election shall recite ''the rate of interest to be paid
on such indebtedness.''   A similar situation was presented to
the supreme court of Florida in *Hillsborough Co.* v. *Hender-
son,* 45 Fla. 356, [33 South. 997].   By the law there referred
to it was required that the resolution ''shall determine the
rate of interest to be paid on the bonds.   The resolution sub-
mitted provides for bonds 'bearing interest at a rate of not
more than four per centum per annum, with interest payable
semi-annually.' ''   That court in passing on the question in-
volved said: ''Is the provision that the interest shall not ex-
ceed a certain rate a compliance with the requirement that
the rate shall be determined?   To determine is defined as
meaning 'to ascertain definitely' or 'to settle,' and it is in this
sense that the word is used in the statute.   A provision which
leaves for future determination the precise rate of interest to
be paid, merely limiting the range of the discretion to be exer-
cised by those who shall ultimately fix it, cannot be said to
determine the rate.''   That statute required the legislative
body by its resolution ''to determine'' the rate of interest, and
the decision of the court is based upon the use of the word
''determine,'' while in the law here under consideration the
ordinance was required ''to recite'' the rate of interest to be
paid on the indebtedness, the purpose of the recital evidently
being to inform the voters with reference to that matter.   In
a number of recent cases ordinances similar to that here in-
volved were held to be a sufficient compliance with a statute
similar to that under consideration.   In the case of the *City
of Cheyenne* v. *State,* 17 Wyo. 90, [96 Pac. 244], the statute
authorizing the bonded indebtedness required that the propo-
sition submitted to the electors ''shall specify the amount of

bonds proposed to be issued, the rate of interest and the purpose for which it is proposed to issue the bonds." The proposition as submitted to the electors stated that the bonds, if voted, should "bear interest at a rate not exceeding five per cent per annum." Upon a suit to compel the issuance and delivery of the bonds upon a bid therefor, which had been accepted by the city, it was held that the form of the proposition submitted was authorized by the statute. The court there said, among other things: " . . . we are unable to understand how any voter could be misled by reason of the rate of interest being specified as not to exceed five per cent per annum. It is impossible to conceive that a voter who voted for the bonds under the proposition as submitted, at least from the view of a taxpayer or citizen, would have voted against them had the proposition been more precise and definite as to the rate by stating it at five per cent per annum, leaving no discretion in the city authorities with reference to the rate. . . . At least the voters approved the proposition, indicating that the bonds might bear interest at five per cent per annum, and this rate is within the statutory limit. It was subsequently provided that the bonds shall bear that rate of interest, and we think the statute should not be given such a literal or technical construction as would render the approval of the bonds otherwise regular inoperative upon the ground suggested." To the same effect is the decision in *Town of Lumberton* v. *John Nuveen Co.*, 144 N. C. 303, [56 S. E. 940]. In a number of late cases, upon an analogous point, it has also been held that the specification of a maximum amount of bond issue is a sufficient compliance with the statute requiring that the amount of bonds proposed to be issued shall be stated. (*City of Oswego* v. *Davis*, 97 Kan. 371, [154 Pac. 1124]; *Arbuckle* v. *McKinney*, 30 Ky. Law Rep. 55, [97 S. W. 408]; *Fishblatt* v. *Atlantic City*, 78 N. J. L. 134, [73 Atl. 125].) Appellant relies upon the case of *Skinner* v. *City of Santa Rosa*, 107 Cal. 464, [29 L. R. A. 512, 40 Pac. 742]. That case, so far as it affects the question involved herein, merely held that the city council, having fixed the rate of four per cent interest payable annually, and stated that rate in the election notice, could not thereafter make said interest payable semi-annually, thereby in effect increasing the rate of interest. In other words, the effect of that decision was that the city council having presented to the voters the proposi-

tion of issuing bonds at four per cent annual interest, could not thereafter, in disregard of the proposition authorized by the electors, change the rate of interest, while in the case at bar there is no such question involved, for the reason that the statement contained in the election notice fixed six per cent as the maximum rate of interest, thus giving notice that the city council would thereafter fix that or a less rate of interest. In the case of *Skinner* v. *Santa Rosa,* the council attempted to issue bonds at a higher rate of interest than was authorized by the people, and in the case at bar the council have fixed a less rate of interest than the maximum authorized by the people. The case of *Hollywood Union High School District* v. *Keyes,* 12 Cal. App. 172, [107 Pac. 129], is also relied upon by appellant. In that case the statute under consideration was construed by the court of appeals to require that the notice of election should state whether the interest was payable annually or semi-annually. The notice involved in that case did not specify whether the interest should be annual or semi-annual, and hence it was held that it did not comply with the statute authorizing the holding of the election.

The statute authorizing the issuance of the bonds in question in this case contained the following section: "Sec. 14. The provisions of this act shall be liberally construed to effect the purpose thereof." The voters of the improvement district have authorized the bonds to the amount of one million and twenty thousand dollars and have specified as the maximum rate of interest six per cent. In pursuance thereof the council have duly fixed the rate of interest at less than the amount authorized, so that the burden imposed upon the taxpayers is less than that which they expressed themselves as willing to incur. [1] It would be a narrow rather than a liberal construction to hold that such a proceeding, altogether to the advantage of the taxpayer who voted the maximum rate, would invalidate the bonds.

The charter of the city of Los Angeles (art. I, sec. 2, subd. 51) contained the following provision: "Sec. 2. The city of Los Angeles, *in addition to any other powers now held by, or that may hereafter be granted to it under the constitution or laws of the state,* shall have the right and power: . . .

"(50) The city of Los Angeles shall have and it is hereby given and it hereby reserves unto itself, and the people of the city hereby reserve unto it, and the people of the state of

California hereby grant unto it, *and said city may hereafter exercise each and every of the powers which a municipal corporation might or could exercise under the constitution of the state of California.''* (Italics ours.) (Stats. 1913, p. 1636.) This section was amended in 1917 (Stats. 1917, p. 1691) by the addition of the following grant of powers in a new subdivision (51) as follows, to wit: ''51. To make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter.'' This charter amendment was made in pursuance of the new provision of section 6 of article XI of the constitution of California as amended November 3, 1914, authorizing cities theretofore organized to amend their charters so as to become empowered thereunder ''to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters.'' It is contended by appellant that after such amendment the general laws of the legislature concerning ''municipal affairs'' did not apply to Los Angeles city. In discussing the effect of this amendment appellant quotes the following statement from *Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441, [166 Pac. 351]: ''The result is that the city has become independent of general laws upon municipal affairs. Upon such affairs a general law is of no force with respect to Los Angeles. If its charter gives it powers concerning them, it has those powers; if its charter is silent as to any such power, no general law can confer it.'' Appellant claims, and respondent concedes, that the creation of the improvement district in question and the issuance of improvement bonds thereof is a ''municipal affair'' within the meaning of the constitution. (*Sunset Tel. & Tel. Co.* v. *Pasadena,* 161 Cal. 265, [118 Pac. 796].) Appellant therefore contends that the statute in question ''no longer has any force or effect with respect to Los Angeles, and that all proceedings *subsequent* to the ratification of the charter with respect to the issuance of said bonds was void.'' This would only include ordinances numbered 37,960 and 37,961, new series, adopted February 27, 1918. By the former all unissued bonds for this improvement were canceled, and by the latter a new issue bearing five and a half per cent was ordered sold.

For the same reason it is claimed by appellant that the general law of May 4, 1917 (Stats. 1917, p. 229) is ineffective,

although its terms are sufficiently broad to ratify the bonds in question.

If the effect of the amendment to the charter (sec. 2, subd. 51) is to make the municipality thereafter independent of the state legislature in its municipal affairs and vests in the legislative body of the city the supreme and plenary legislative power on the subject of municipal affairs within the limits of the municipality (a question we do not need to determine), and if the issuance of the bonds in question is a municipal affair, as is conceded, it follows that the council had authority to fix the terms of the bonds and the conditions of their sale, including the interest they should bear, subject only to constitutional restrictions, and no claim is made that any constitutional provision is violated by the mode and manner in which it is proposed to issue and sell said bonds. However, we do not think that it can be said that the law of 1915 does not apply, for the reason that the legislative body of the city in the ordinance establishing the district expressly predicated its right to proceed upon the statute in question. It is recited in said ordinance No. 34,752, new series: ''Whereas a petition was filed in the office of the city clerk of the city of Los Angeles on the 1st day of September, 1916, requesting that proceedings be taken in pursuance of an act of the legislature of the state of California, entitled 'An act to provide for the formation of districts within municipalities for the acquisition or construction of public improvements, works and public utilities; for the issuance, sale and payment of bonds of such districts to meet the cost of such improvements; and for the acquisition or construction of such improvements,' approved April 20, 1915,'' and it is provided in section 1: ''That it is the intention of the council of the city of Los Angeles to call an election . . . for the purpose of submitting to the qualified electors of said district the proposition of authorizing the issuance and sale of bonds of such district in the manner prescribed in said act, approved April 20, 1915.'' And in ordinance 34,860, calling an election for the issuance of said bonds it is again recited that a petition has been filed requesting that proceedings be taken under the act in question, and reciting that in pursuance of said petition the council passed its ordinance 34,752, ''containing the matters prescribed by said act, and declaring the intention of the city council to call an election, etc. . . . authorizing the issuance and sale of

bonds of such district *in the manner provided for in said act."*
(Italics ours.)    In ordinance 35,007, new series, it is recited:
"Whereas, in pursuance of an act of the legislature of the
state of California entitled [then follows the entire title of the
act of 1915 in question] and of ordinance 34,860, new series,
a special election was held in that certain territory . . . ;
whereas according to the returns of such election . . . more
than two-thirds of all the voters voting at said election did
vote in favor of incurring the bonded indebtedness . . . ,"
it was ordained as follows: "Sec. 1.   That bonds of said muni-
cipal improvement district No. 1 of the City of Los Angeles
be issued in accordance with an act of the legislature of the
State of California entitled: [Then follows the complete title
of the act of April 20, 1915.]"   The ordinance also provides
for the form of the bond, in which it is stated: "Under and
by virtue of an act of the legislature of the state of California,
entitled [then follows the complete title of the act], municipal
improvement district No. 1 etc. promises out of the funds here-
inafter described to pay to the bearer," etc.   In ordinance
37,961, adopted after the charter amendment in question (art.
I, sec. 2, subd. 51), the act in question is again referred to
by title as the act controlling the matter of the issuance of
the bonds in question.   The form of the bond therein provided
for also refers to the act in question.   If the legislative body
of the city of Los Angeles is supreme in municipal affairs by
virtue of the constitutional and charter provisions above re-
ferred to, and if without affirmative action on the part of
the legislative authority of the city, no general law with rela-
tion to municipal affairs has any binding effect therein, it is
nevertheless true that the legislative body of the city has
power to adopt any state law applicable to its municipal
affairs, and that in the matter of the issuance of these bonds
that was effectually done by the ordinances and proceedings
above referred to.   [2]   Having thus elected in the first in-
stance to proceed under and by virtue of the statute in ques-
tion, the city was bound to pursue that authority, unless by
subsequent legislative act they made proper changes therein.

    [3]   There is no doubt that failure to correctly state the
amount of interest in the notice of election complained of, if
it be a defect, could be cured by legislative ratification.   (*City
of Redlands* v. *Brook,* 151 Cal. 474, [91 Pac. 150]; *City of
Venice* v. *Lawrence,* 24 Cal. App. 350, [141 Pac. 406]; *City*

*of Sacramento* v. *Adams,* 171 Cal. 458, [153 Pac. 908] ; *Givens* v. *County of Hillsborough,* 46 Fla. 502, [110 Am. St. Rep. 104, 35 South. 88].)    But it is contended that the curative act of the legislature has no application to the city of Los Angeles and to the particular bond issue in question, for the reason that it, too, is a general law.    The purpose of the law ratifying the bond issue in question was to confirm the proceedings, so as to enable the city to present to the buyers of the bonds in question a duly authorized contract on behalf of the improvement district.    It would seem, then, that the act of ratification was not strictly a municipal affair, because it relates to a contract with third persons.    If, however, the act of ratifying a bond issue of this sort is a municipal affair, ordinance No. 37,961 of the city of Los Angeles, passed after the charter amendment, authorizing the issuance of bonds in pursuance of the election in question, would constitute such ratification, and if, on the other hand, the ratification is not a municipal affair, a point we need not determine, we have a proper ratification by the state legislature.    It follows, then, that the legislative body of the city of Los Angeles, adopted, as the mode and manner of issuing the bonds in question, the act of the legislature of the state of California, approved April 20, 1915 ; that such statute was regularly pursued with reference to the fixing of interest in the election notice; that the bonds were ratified both by the state legislature and the city council, and the judgment of the superior court refusing to enjoin the issuance of the bonds was correct.

In view of the conclusion we have reached it is unnecessary to pass upon the claim of respondent that a previous judgment between a taxpayer and the officials of the respondent city, refusing to enjoin the issuance of these bonds, is *res adjudicata.*

The judgment is affirmed.

Lennon, J., Melvin, J., and Angellotti, C. J., concurred.

SHAW, J.—I concur in the judgment, and generally in the opinion of Justice Wilbur.    But with regard to his discussion of the effect of the charter amendment of 1917, adding subdivision 51 to section 2 (Stats. 1917, p. 1691), making the city independent of general laws relating to municipal affairs, I think that all that need be said is that it did not purport to be and is not retroactive upon things already accomplished

under a general law, that it took conditions as they were at the time, and did not invalidate improvement districts already formed, nor elections already held for the issuance of bonds by such districts, under such a law, nor revoke the authority given at such election, nor ordinances already adopted in pursuance thereof. With regard to the subsequent ordinance increasing the rate of interest on the bonds unissued and directing a cancellation and reissue in order to effect the alteration, it appears to be fully authorized by the extraordinarily comprehensive and complete grant of municipal powers to the city, embraced in the amendment of 1913, quoted in the opinion of Justice Wilbur, adding subdivision 50 to section 2 of the charter (Stats. 1913, p. 1636), if any further authority was needed than would be implied from the fact that the prior proceedings stood unaffected and were valid.

Olney, J., and Lawlor, J., concurred.