**BLOODWORTH et al. v. RHEA et al.\***
**(No. 11581.)**

(Court of Civil Appeals of Texas. Fort Worth. Dec. 12, 1925. Rehearing Denied Jan. 30, 1926.)

**1. Statutes ⬚107(8)—Act to put into effect Const. art. 7, § 3, held not unconstitutional as containing more than one subject by providing for issuance of school building bonds and levy of taxes therefor (Acts 37th Leg. [1921], c. 24; Const. art. 3, § 35).**

Acts 37th Leg. (1921) c. 24, passed to put into effect Const. art. 7, § 3, relating to independent and common school districts, *held* not violative of Const. art. 3, § 35, because containing more than one subject, by granting authority to trustees of district to order election to determine whether to levy tax and by providing for issuance of school building bonds by districts, and levying of taxes in payment thereof; grant of such authority being clearly calculated to carry into effect declared object of Const. art. 7.

**2. Constitutional law ⬚48.**

Act will not be declared unconstitutional unless it is clearly so.

---

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 24, 1926.

.(280 S.W.)

**3. Schools and school districts ⬤═97(4)—Petition and order for election for issuance of bonds to construct and equip public free school building and purchasing site held not defective, so as to void election, because stating that bonds to be voted on would bear interest not exceeding 6 per cent. per annum (Acts 37th Leg. [1921], c. 24).**

Petition and order for election for issuance of bonds to construct and equip free school building and to purchase site, under Acts 37th Leg. (1921), c. 24, *held* not defective, so as to void election, in stating that bonds to be voted on would bear interest not exceeding 6 per cent. per annum.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Suit by J. C. Bloodworth and others against John B. Rhea and others. Judgment dismissing petition, and plaintiffs appeal. Affirmed.

M. D. Brown, of Graham, for appellants.
W. L. Scott, of Olney, for appellees.

DUNKLIN, J. J. C. Bloodworth and five other resident qualified property tax paying voters residing in the Olney independent school district of Young county instituted this suit against that school district and the members of the board of trustees of the same and the county attorney of Young county to enjoin the board from issuing bonds that had been voted by the district, for the purpose of constructing and equipping a public free school building and purchasing a site therefor within said district, and also from levying and collecting taxes to pay the same. The amount of bonds that had been so voted aggregated $75,000.

A general demurrer and several special exceptions, which were in the nature of general demurrers to the petition for injunction, were sustained by the trial court, and the plaintiffs having declined to amend the petition, the same was dismissed. From that order this appeal has been prosecuted by the plaintiffs in the suit.

The election was held under and by virtue of chapter 24 of the general laws of the state, passed by the 37th Legislature, which convened January 11, 1921 (see Acts 1921, p. 56). That act, as recited in its caption, was passed to put into effect amended section 3 of article 7, of the state Constitution, adopted in 1909, which, after setting apart one-fourth of the revenues derived by the state from occupation and poll taxes and requiring the levy of an additional ad valorem tax, all for the benefit of the public free schools, also provides:

"And the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the public school or schools of such district, whether such districts are composed of territory wholly within a county or in parts of two or more counties. And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts, heretofore formed or hereafter formed, for the further maintenance of public free schools, and the erection and equipment of school buildings therein; provided, that a majority of the qualified property taxpaying voters of the district, voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year fifty cents on the one hundred dollar valuation of the property subject to taxation in such district, but the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns, constituting separate and independent school districts."

The petition for injunction was based on two grounds: One was that that act of the Legislature was unconstitutional; and, second, that the election held thereunder was void, in that neither in the petition for the election nor in the court's order for the holding of the same, nor in the notices of election posted prior to the holding of the same, was there any statement of the rate of interest which the bonds voted on were to bear.

The caption of chapter 24 of the Acts of 1921 reads as follows:

"An act putting into effect amended section 3 of article 7, of the Constitution relating to independent and common school districts; * * * providing for the issuance of school building bonds by such districts and levy of taxes in payment thereof; repealing all laws and parts of laws in conflict therewith, and declaring an emergency."

[1] Appellants insist, first, that the act was unconstitutional, since it was passed to put into effect section 3 of article 7, and therefore it could not embrace more subjects than were authorized by that constitutional provision, and that the provisions relating to the issuance of bonds cannot be given effect, since the article of the Constitution did not authorize the issuance of the bonds, but gave authority only to the Legislature to pass laws for the levy and collection of taxes in such districts for the maintenance of public free schools and the erection and equipment of school buildings therein; second, that the act of the Legislature was void for the further reason that it embraced more than one subject, and therefore was in contravention of article 3, § 35, of the Constitution, to the effect that no bill (except certain provisions not necessary to mention) shall contain more than one subject, which shall be expressed in its title.

The following is quoted from the syllabus of the decision in Brown v. City of Galveston, 75 S. W. 488, 97 Tex. 1:

"All political power is inherent in the people of the state * * * and it is to them that the right of local self-government is secured. * * * These powers are distributed among the departments of the state government; * * * and

all the powers of the people which may properly be exercised in the formation of laws against which there is no inhibition expressed or implied in the Constitution, are conferred upon the Legislature."

While section 3, article 7, of the Constitution, does not specifically provide that the Legislature may pass an act authorizing the issuance of school building bonds, which are to be paid by the levy of taxes, yet it is clear that it does not either expressly or impliedly forbid such authority. On the contrary, the authority to issue such bonds is clearly calculated to carry into effect the declared object of article 7 of the Constitution, as expressed in the first section thereof, making it the duty of the Legislature of the state "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

[2] It is also a well-settled rule that an act will not be declared unconstitutional unless it is clearly so. Whittenberg v. Craven (Tex. Com. App.) 258 S. W. 152; Charles Scribner's Sons v. Marrs, 262 S. W. 722, 114 Tex. 11; Sid Westheimer v. Piner (Tex. Com. App.) 263 S. W. 578.

In Johnson v. Martin, 12 S. W. 321, 75 Tex. 40, and Doeppenschmidt v. I. & G. N. Ry. Co., 101 S. W. 1080, 100 Tex. 532, in sustaining the validity of an act of the Legislature which was attacked on the ground that it was in contravention of article 3, § 35, of the Constitution, the following was quoted, from 1 Dillon on Municipal Corporations, with approval:

"This provision has been frequently construed to require only the general or ultimate object to be stated in the title, and not the details by which the object is to be attained. Any provision calculated to carry the declared object into effect is unobjectionable, although not specially indicated in the title."

Other decisions to the same effect might be cited.

In upholding a statute which was attacked upon the ground that some of its provisions were not mentioned in the title, our Supreme Court, in Snyder v. Compton, 28 S. W. 1061, 87 Tex. 374, had this to say:

"Here, although the subsidiary provision is not express, it is legitimately connected with the main subject, and tends to effect and enforce the main object of the law. 'Any provision calculated to carry the declared object into effect is unobjectionable, although not specially indicated in its title.' 1 Dill. Mun. Corp. 28, quoted with approval in Johnson v. Martin [12 S. W. 321] 75 Tex. 33."

As stated in the title to the act of the Legislature of 1921, the object of the act was to put into effect amended section 3 of article 7 of the Constitution, and, since all of the provisions of the act were plainly calculated to accomplish that object, we overrule appellants' assignments of error in which complaint is made that the title expresses more than one subject and that it failed to include any reference to the provisions for holding an election to determine whether or not school building bonds should be issued by independent school districts as provided in sections 14a to 18, inclusive.

While article 3 of section 7 of the Constitution does not expressly authorize the enactment of a law for the issuance of bonds to realize in advance taxes which have been voted for the purposes mentioned in that article, yet the issuance of bonds is manifestly germane to that purpose. At all events it cannot be said that that article prohibits the enactment of such a law. It is also manifest that the authority given in the body of the act of 1921 to the trustees of an independent school district to order an election to determine whether or not a tax should be levied and collected for the maintenance of an independent school district, and for the issuance of school building bonds and the levy of taxes in payment thereof, is expressly authorized by article 3, section 7, of the Constitution, and, as stated in the caption, the act was passed to put that provision of the Constitution into effect. The provisions for the levy and collection of maintenance taxes and taxes for school buildings and the purchase of sites therefor are germane to the general purpose and subject of the act, to wit, the support and maintenance of an efficient system of public free schools within the meaning of sections 1 and 3 of article 7 of the Constitution.

[3] Section 14 of the Act of 1921 (Vernon's Ann. Civ. St. Supp. 1922, art. 2857a) vests the trustees of independent school districts with power to issue coupon bonds for the purpose of purchasing, constructing, repairing, or equipping public free school buildings within the limits of the district after such bonds have been voted in accordance with the provisions of the act, "provided further that such bonds shall bear interest not exceeding 6 per cent. per annum."

Section 14a of the Act of 1921 (article 2858) provides that the petition for such an election shall "state the rate of interest to be borne by such bonds."

Section 15 (article 2858a) provides that upon presentation of the petition the board of trustees of the independent school district shall make and cause to be entered of record upon its minutes, an order directing that an election be held "for the purpose of determining the proposition mentioned in such petition."

Section 16 (article 2859) provides that when the election has been ordered the secretary of the board shall "issue a notice stating in substance the contents of such election order. * * *"

Appellants insist that the statement in the petition for the election and in the order directing the holding thereof that the bonds to

be voted on would "bear interest" not exceeding 6 per cent. per annum was not in compliance with those provisions of the act, and that therefore the board of trustees had no lawful authority to issue the bonds in question. Counsel for appellants admits in his brief that he has been unable to find any decision directly in point supporting his contention last referred to, but he cites the following decisions as tending to support the contention: Lowrance v. Schwab, 101 S. W. 840, 46 Tex. Civ. App. 67; Parks v. West (Tex. Civ. App.) 108 S. W. 466; Parks v. West, 111 S. W. 726, 102 Tex. 11; Wilbern v. Cone (Tex. Civ. App.) 148 S. W. 819.

The case last cited we believe tends to refute rather than support appellants' contention, and in the opinion in that case it is pointed out that the elections involved in the other two decisions were under a statute which has since been repealed. Counsel for appellees have cited several authorities which seem to be strongly in point, such as Red Springs Hotel Co. v. Town of Red Springs, by the Supreme Court of North Carolina, 72 S. E. 837, 157 N. C. 137; Cole v. City of Los Angeles, by the Supreme Court of California, 182 P. 436, 180 Cal. 617; Cheyenne v. State, by the Supreme Court of Wyoming, 96 P. 244, 17 Wyo. 90; Oswego v. Davis, 154 P. 1124, 97 Kan. 371; State ex rel. Spokane County v. Clausen, 188 P. 23, 110 Wash. 112; McCall v. Lewis (Tex. Civ. App.) 263 S. W. 325. In the case first cited the following was said:

"The plaintiff bases its claim for injunctive relief upon five propositions: * * * (3) That chapter 170 of the Private Acts of North Carolina, Session 1911, does not definitely fix the rate of interest to be borne by said bonds, but leaves the rate of interest to the discretion of the board of commissioners and board of public works of said town; and hence said act is null and void, and no authority is conferred upon the town of Red Springs to issue said bonds, or to levy any tax on account thereof. This contention cannot be sustained. The purpose of the Legislature in providing that the bonds should bear at a rate of 'not more than 6 per cent.' was to give the town authorities discretion to sell the bonds to bear a rate of interest most advantageous to the town, not exceeding, in any event, 6 per cent. By section 5 of the act above referred to, discretion is given to the * * * board of commissioners of the town to fix the rate when the bonds are sold, not exceeding 6 per cent. The point is expressly decided in Lumberton v. Nuveen, 144 N. C. 303, 56 S. E. 940."

Cole v. City of Los Angeles, supra, was a suit to enjoin the issuance of bonds by the city which had been voted at an election held therefor, under an ordinance of the city. The statute which authorized the enactment of the ordinance and the ordinance itself,

280 S.W.—68

both provided that the maximum interest which the bonds should draw would be 6 per cent. per annum. The statute also provided that the ordinance calling for such an election should state the rate of interest the bonds should bear. In overruling the contention that the ordinance was void because it did not specify the rate of interest the bonds should bear, the court said:

"In a number of recent cases, ordinances similar to that here involved were held to be a sufficient compliance with a statute similar to that under consideration. In the case of City of Cheyenne v. State, 17 Wyo. 90, 96 P. 244, the statute authorizing the bonded indebtedness required that the proposition submitted to the electors 'shall specify the amount of bonds proposed to be issued, the rate of interest and the purpose for which it is proposed to issue the bonds.' The proposition as submitted ·to the electors stated that the bonds, if voted, should 'bear interest at a rate not exceeding 5 per cent. per annum.' Upon a suit to compel the issuance and delivery of the bonds upon a bid therefor, which had been accepted by the city, it was held that the form of the proposition submitted was authorized by the statute. The court there said, among other things: 'We are unable to understand how any voter could be misled by reason of the rate of interest being specified as not to exceed 5 per cent. per annum. It is impossible to conceive that a voter who voted for the bonds under the proposition as submitted, at least from the view of a taxpayer or citizen, would have voted against them had the proposition been more precise and definite as to the rate of stating it at 5 per cent. per annum, leaving no discretion in the. city authorities with reference to the rate. * * * At least the voters approved the proposition, indicating that the bonds might bear interest at 5 per cent. per annum, and this rate is within the statutory limit. It was subsequently provided that the bonds shall bear that rate of interest, and we think the statute should not be given such a literal or technical construction as would render the approval of the bonds otherwise regular inoperative upon the ground suggested.'

"To the same effect is the decision in Town of Lumberton v. John Nuveen Co., 144 N. C. 303, 56 S. E. 940. In a number of late cases, upon an analogous point, it has also been held that the specification of a maximum amount of bond issue is a sufficient compliance with the statute requiring that the amount of bonds proposed to be issued shall be stated. City of Oswego v. Davis, 97 Kan. 371, 154 P. 1124; Arbuckle v. McKinney (Ky.) 97 S. W. 408; Fishblatt v. Atlantic City, 78 N. J. Law, 134, 73 A. 125."

Other decisions cited by counsel for appellees are to the same effect. The reasoning advanced in the decisions from which quotations have been made we believe is entirely sound, and, based thereon, we overrule appellants' assignment last referred to.

Accordingly, the judgment of the trial court is affirmed.